[No. A030073. First Dist., Div. Two. Nov. 25, 1986.]

CARL M. MALMSTROM, Plaintiff and Appellant, v.
KAISER ALUMINUM & CHEMICAL CORPORATION,
Defendant and Respondent.

304

**COUNSEL**

Thomas M. Carnes, Carnes, Aune & Dibble, Carnes & Aune, B. E. Bergesen III and Siegfried Hesse for Plaintiff and Appellant.

Stephen H. Booth, Robert J. Allen, Jr., and Theodore C. Borromeo for Defendant and Respondent.

**OPINION**

**BENSON, J.**—Carl M. Malmstrom appeals from a judgment entered after the trial court granted the motion for summary judgment of his former employer, Kaiser Aluminum & Chemical Corporation, to the first and second causes of action of the first amended complaint. We affirm the judgment.

I

*Pleading and Procedural Background*

The first cause of action of the first amended complaint for breach of contract alleges breach of an implied contract to employ Malmstrom until his retirement, subject only to discharge for cause. It also alleges breach of Kaiser's written policies concerning placement and relocation of terminated employees. The second cause of action alleges tortious breaches of the duty of good faith and fair dealing implied in the contract. This cause of action incorporates the allegations of the first cause of action and adds

allegations of specific breaches of the duty (1) by terminating him without making a good faith attempt to place him elsewhere within the company or with another company, (2) by refusing to purchase his home in Florida and (3) by terminating him and replacing him with a younger employee.

Kaiser filed its motion for summary judgment on the first cause of action on the grounds: (1) it was barred by the statute of frauds; (2) Malmstrom's admissions reveal no promise of protection against layoff; (3) Malmstrom signed a contract providing his employment was terminable at will thus precluding an implied agreement; and (4) Kaiser laid off Malmstrom for good cause. Kaiser's grounds for summary judgment on the second cause of action were: (1) Kaiser had no contractual duty to buy Malmstrom's home; (2) the statute of frauds bars the alleged contract to purchase the home; (3) the age discrimination claim is preempted by the provisions of the California Fair Employment and Housing Act and is barred by failure to file the claim required by the act; and (4) the claim that Kaiser failed to pursue good faith efforts to help Malmstrom find a job is groundless.

In opposition to the motion for summary judgment on the first cause of action, Malmstrom argued: (1) the employment agreement is not barred by the statute of frauds since it is conditioned upon satisfactory performance and may be performed within one year; (2) if it were subject to the statute, Kaiser is estopped to raise the statute of frauds because he would be unconscionably injured by the losses he suffered due to his move to Florida; (3) Kaiser admits Malmstrom asked for and received assurances of permanent employment if he transferred to Florida; and (4) whether Kaiser had good cause to terminate Malmstrom is a question of fact.

In his opposition to the motion for summary judgment on the second cause of action, Malmstrom abandoned his claim based on age discrimination admitting he had not filed a notice of discrimination with the appropriate governmental agency. Rather than arguing Kaiser breached the duty of good faith by failing to make a good faith effort to place him elsewhere in the company and by failing to purchase his Florida home, as alleged in the first amended complaint, Malmstrom argued that once Kaiser elected to breach its agreement with him, it had a good faith duty to pay all damages he suffered as a result of the breach.

The trial court granted summary judgment on both causes of action on the ground the oral contract was barred by the statute of frauds. We determine the decision below is correct, although on grounds different from that relied on by the trial court. The California Supreme Court presently has before it the issue of whether oral employment agreements are barred by the statute

of frauds.[1] Since the nature of the resolution of that issue remains uncertain at this time, and because other grounds exist which support the decision of the trial court, we decline to rule on the propriety of the statute of fraud ruling in this case. ■ It is well settled that "If the *decision* of the lower court is right, the judgment or order will be affirmed regardless of the correctness of the grounds upon which the court reached its conclusion. Two theories seem to be involved here: *First,* that the appellate court reviews the *action* of the lower court and not the reasons for its action; *second,* that there can be no prejudicial error from erroneous logic or reasoning if the decision itself is correct." (9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 259, p. 266.)

## II

### *Factual History*

The facts presented to the trial court are not in dispute although the inferences to be drawn from the facts are contested. Malmstrom was hired by Kaiser to work in its aluminum can division at the San Leandro, California plant. He commenced work as a district customer service representative on January 2, 1977, four days before his fifty-sixth birthday.

Malmstrom had worked for Continental Can Company for 27 years before coming to Kaiser. He had been a general foreman. In 1976, Malmstrom learned the Continental plant was being sold and his job was being eliminated. Malmstrom was offered and took early retirement from Continental. Kaiser sought out Malmstrom after his layoff had been decided but, while he was still employed at Continental.

During the prehiring interviews conducted by Kaiser, Malmstrom questioned his interviewers about the permanency of the position he was offered. He was assured the job would continue as long as he performed his work satisfactorily. Malmstrom testified that at the time he was hired Mr. Johnson of Kaiser told him "any employee in Kaiser who does a commendable job, credible job, would have a longlasting job. He indicated this in a general statement that they never—it wasn't a matter of temporary layoff or anything like that, it would be a permanent position." Mr. Johnson also told Malmstrom "as long as one [does] a commendable job up to their expectations,

---

[1]*Santa Monica Hospital* v. *Superior Court* (1985) 172 Cal.App.3d 698 [218 Cal.Rptr. 543], mod. of opn. 173 Cal.App.3d 348d, review granted Jan. 16, 1986; *Foley* v. *Interactive Data Corp.* (1985) 174 Cal.App.3d 282 [219 Cal.Rptr. 866], review granted Jan. 30, 1986; *Miller* v. *Indasco, Inc.* (1986) 178 Cal.App.3d 296 [223 Cal.Rptr. 551], review granted June 20, 1986.

that you had no fear of being laid off." Mr. Johnson also said "they never laid off anyone unless there was due cause obviously of some nature." When Malmstrom was asked during his deposition if this guarantee extended even if there were a shut down of a plant or division of Kaiser, he replied "[t]hat never entered the conversation."

On January 3, 1977, Malmstrom signed a one-page agreement with Kaiser concerning his employment. The agreement consists of six numbered paragraphs. Paragraph 1 provides "Employer employs and shall continue to employ Employee at such compensation and for such a length of time as shall be mutually agreeable to Employer and Employee." Paragraphs 2 through 5 contain provisions concerning inventions made by the employee and confidential information of Kaiser. Paragraph 6 provides "This agreement shall supersede all previous agreements by and between Employer and Employee and shall be retroactive to the date on which Employee commenced his employment." This written agreement is not mentioned in Malmstrom's complaint.

In April 1981, Malmstrom's supervisor told him Kaiser had decided to decentralize the customer service representative functions and his job was being transferred to the Kaiser plant in Jacksonville, Florida. At that time several employees at the San Leandro plant were terminated because of the decrease in business. The number of employees at the plant went from 95 to 38. Malmstrom was offered no other job in California. Kaiser offered to transfer him to Florida. Malmstrom was 60 years old at this time. He spoke on several occasions with his superiors about the permanency of the job in Florida. Malmstrom testified that "Throughout my many discussions with Johnson and Whitman about the transfer, I was assured that this was a permanent transfer to Florida which had been approved at the highest level of the company." Whitman testified he meant it was not a temporary transfer. Malmstrom informed his supervisors he wished to work until at least age 65 and stated he would not retire at age 62. Whitman replied "It would not pay for us to send you there for only two years." Malmstrom admits he was not given assurances as to how long he would be employed in Florida. He felt it was "very implied" in conversations he had with his superiors that he would be employed beyond age 62 and at least until he was 65.

Malmstrom accepted the transfer, sold his home in California to Kaiser at a profit of over $100,000 and, at Kaiser's expense, he and his wife moved to Florida in May 1981. Malmstrom bought a new home in Florida. Kaiser paid him over $10,000 to cover the mortgage rate differential, inflation and the loan points.

In December 1981, Malmstrom received a copy of a memorandum from the president of Kaiser informing employees of impending major corporate changes including staffing reductions. This was the first Malmstrom knew of these changes.

Kaiser, in its motion for summary judgment, offered uncontroverted evidence by declaration and deposition testimony that business in its aluminum can division had seriously declined, that the division registered its first loss in the final quarter of 1981 and that reductions in personnel were necessary to reduce its losses. In September or October 1981 Kaiser decided to reduce its staff. In December 1981 it decided on the number of staff to be cut. Between December 1981 and March 1982, some 400 salaried employees in the aluminum division were laid off. Between 1982 and June 1984, the total number of Kaiser employees declined from 27,000 to 18,000.

On January 5, 1982, Malmstrom was told he was terminated as part of the staff reduction. His job was eliminated by Kaiser. Kaiser evaluated whether Malmstrom could be placed within Kaiser but decided his experience was too specialized to be given another job. In any event, placement would have been difficult because other divisions were also being reduced at this time. His termination was presented to a corporate termination committee for its review and approval. Malmstrom states he was given no help in finding another job other than the use of the telephone and the secretary at his office.

Kaiser issued its personnel policy and practice number 3.08 in January 1968. Malmstrom admits he was aware of this policy. A copy of the policy is attached to his first amended complaint and forms the basis for his second cause of action. This policy provides that salaried employees whose services are no longer needed by Kaiser for reasons of company convenience will be assisted to find comparable positions with other departments or divisions of Kaiser or with other companies. Company convenience is defined in the policy as cutbacks in operations, discontinuances in certain activities, abandonment of a plant or elimination of jobs for reasons other than the performance of the incumbent. The practice requires Kaiser to attempt to place the employee within his department or division or, failing that, with an affiliate or another company.

In January 1977, Kaiser issued its "Termination Payment and Benefits Continuation Policy for Exempt Salaried Employees." In June 1978, this policy was mailed to all employees in Malmstrom's classification, including Malmstrom. This policy provides for termination pay and continuance of benefits for a period of time in the event of termination of an employee due

to cutback in operation, discontinuance of certain business activities or job elimination.

Kaiser set up an outside placement service in Oakland, California for the approximately 40 employees of the can division laid off at the same time as Malmstrom. The service offered employees seminars, help with writing resumes and information on how to target employers.

Kaiser admits it did not do much to assist Malmstrom to find other employment. In its motion for summary judgment Kaiser states it was led to believe he had another job offer from Miller Brewing Company. Malmstrom does not deny this statement.

Malmstrom stated he called the placement service in Oakland about three times but it was very difficult to get through to the man to whom he was supposed to talk. His request to fly to Oakland at company expense to use the service was denied. He asked Kaiser to purchase his house in Florida but Kaiser refused. At Malmstrom's request, Kaiser made an exception to its existing policy and agreed to pay $10,000 to move him and his wife back to California. Kaiser also paid Malmstrom two months' severance pay and one month's vacation pay. Malmstrom also receives a pension from Kaiser of $160.11 per month.

Malmstrom found a job with MJB in Union City, California through a friend of his and he began work there as a plant maintenance supervisor on June 1, 1982. Malmstrom moved his furniture back to California at Kaiser's expense in August 1982, after he had started work with MJB.

### III

### *Contentions*

On appeal, Malmstrom contends he and Kaiser entered into an express oral contract at the time of his 1977 employment agreement which provided that if Malmstrom performed his job satisfactorily he would not be terminated. He asserts that the oral promises made by Kaiser should be presented to a jury because the written contract signed by Malmstrom was not an integrated contract and the oral promises were made to him contemporaneously. In the alternative, Malmstrom claims the oral promises should have been presented to the jury to aid in the interpretation of the written contract. Malmstrom also asserts that if the contract were found to be integrated, Kaiser is estopped to raise that integration.

Malmstrom also claims that in 1981, when he was transferred to Florida, an implied agreement was made that he would be employed to age 65. He claims this agreement was supported by independent consideration, or was an oral agreement which superseded or modified the 1977 agreement. In the alternative, Malmstrom claims Kaiser is estopped to deny that the 1981 agreement superseded or modified the 1977 agreement.

Malmstrom contends Kaiser breached the duty of good faith and fair dealing (1) by terminating him after he was transferred to Florida, (2) by concealing from him its intention to shut down the Florida plant at the time it offered him the transfer to that plant, (3) by refusing to assist him in finding a new job, and (4) by denying the existence of the contract as alleged by Malmstrom. Malmstrom also asserts neither the 1977 nor the 1981 oral contracts are barred by the statute of frauds since both contracts were conditioned upon his satisfactory performance or that Kaiser is estopped to raise the statute of frauds.

Kaiser responds to Malmstrom's contentions in the following manner. With respect to the 1977 written contract, Kaiser argues the prehire statements were nothing more than oblique statements of hope which, in any event, were superseded by the written contract. Kaiser claims this written contract provides for employment terminable at will. Kaiser asserts evidence of the oral promise is not admissible since it contradicts the express contract terms. Also, Kaiser points to its personnel policies which refer to its right to terminate employees in the event of cut back or elimination of jobs and asserts these policies are part of Malmstrom's contract of employment.

With respect to the alleged oral agreements made in 1981, Kaiser argues the statements made by its employees are not sufficient to raise a contractual obligation other than the employment terminable at will. It asserts the express written contract of 1977 precludes a contrary implied contract in 1981. Kaiser also argues that the alleged implied agreement of 1981 was not a modification of the 1977 written agreement nor did it supersede that prior agreement. It asserts the 1981 agreement is barred by the statute of frauds because it is not conditioned upon satisfactory performance. It contends the agreement alleged by Malmstrom could be no more than an agreement not to terminate except for cause and that Kaiser had good cause to terminate Malmstrom. Kaiser asserts no estoppel exists under the facts of this case as a matter of law. Lastly, Kaiser argues it committed no act of bad faith extraneous to the employment agreement, hence no claim for breach of the duty of good faith can be asserted against it.

## IV

### *Standard of Review*

Section 437c, subdivision (c) of the Code of Civil Procedure provides that a motion for summary judgment ". . . shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ■ Since it is the plaintiff below who challenges the granting of the summary judgment motion, "this court must liberally construe the evidence in plaintiffs' declarations and, viewing the admissible factual evidence in the light most favorable to plaintiffs, we must determine whether evidence was presented which, if true, would support a triable issue of fact as to each cause of action." (*Bert G. Gianelli Distributing Co.* v. *Beck & Co.* (1985) 172 Cal.App.3d 1020, 1034 [219 Cal.Rptr. 203].)

## V

### *The Express Oral Agreement Allegations*

■ We are obliged to point out that Malmstrom's contentions on appeal attempt to expand the allegations of his first amended complaint. His first amended complaint in paragraph eight alleges "the parties impliedly agreed by their conduct that plaintiff's employment would continue until his retirement, subject only to discharge for cause." On appeal Malmstrom asserts the parties expressly orally agreed his employment would continue so long as he satisfactorily performed his job. "'The counteraffidavits filed in response to a defendant's motion for summary judgment may not create issues outside the pleadings; [and] are not a substitute for an amendment to the pleadings.'" (*Willard* v. *Hagemeister* (1981) 121 Cal.App.3d 406, 414 [175 Cal.Rptr. 365].) We will not consider Malmstrom's argument that there was an express oral agreement between the parties.

## VI

### *The 1977 Agreement as an Integrated Agreement*

■ Second, Malmstrom also raises arguments on appeal which were not presented to the trial court. Malmstrom now seeks to argue the written contract was not integrated so that the evidence of the oral promise should have been presented to the jury or that evidence of the oral promise should have gone to the jury to aid in interpretation of the written agreement. Malmstrom fails to acknowledge that these arguments were not made in the

trial court and Kaiser fails to object on this ground. Malmstrom's opening brief states Kaiser offered no evidence on the issue of integration in support of its motion while Malmstrom offered evidence that he did not intend the written agreement to eliminate the oral promise. Malmstrom offers no citation to the record to support that he offered any such evidence, nor do we find evidence in the record relating to the intent of the parties in signing the contract.

"Admittedly, California law is not completely clear on the theory whether contract integration is a matter of law or of fact. The state appellate courts have stated both that integration is a question of law for the court (*see Brawthen* v. *H & R Block, Inc.,* 28 Cal.App.3d 131, 137, 104 Cal.Rptr. 486, 490 (1972), and that the judge's finding in this respect is a determination of fact to be made by the court. *See Mobil Oil Corp.* v. *Handley,* 76 Cal.App.3d 956, 961, 143 Cal.Rptr. 321, 324 (1978)." (*Sullivan* v. *Massachusetts Mut. Life Ins. Co.* (9th Cir. 1979) 611 F.2d 261, 264.) Since the issue is fully briefed by the parties on appeal, we will treat the issue as one of law and decide the issue on the undisputed evidence before the trial court. "[P]arties have been permitted to change their theory on appeal where the issue is purely a question of law presented on undisputed facts." (*Frink* v. *Prod* (1982) 31 Cal.3d 166, 170 [181 Cal.Rptr. 893, 643 P.2d 476].) We follow this direction of the California Supreme Court.

California law presumes a written contract supersedes all prior or contemporaneous oral agreements. (Civ. Code, § 1625; Code Civ. Proc., § 1856.) ██ Parol evidence is admissible to establish the terms of the complete agreement of the parties only if the written agreement is not the complete and final embodiment of that agreement. (*Masterson* v. *Sine* (1968) 68 Cal.2d 222, 225 [65 Cal.Rptr. 545, 436 P.2d 561].)

To determine whether evidence of an alleged oral agreement is admissible the questions the court must address are "(1) whether the written agreement appears to state a complete agreement; (2) whether the alleged oral agreement directly contradicts the writing; (3) whether the oral agreement might naturally be made as a separate agreement; (4) whether the jury might be misled by the introduction of the parol testimony." (*Brawthen* v. *H & R Block, Inc.* (1975) 52 Cal.App.3d 139, 146 [124 Cal.Rptr. 845].) Where the trial court has made no finding concerning whether the contract is integrated, it is for this court to determine. (*Bert G. Gianelli Distributing Co.* v. *Beck & Co., supra,* 172 Cal.App.3d at pp. 1037-1038.)

██ This court may consider "'relevant extrinsic evidence that explains but does not flatly contradict the writing' [and the] '[c]ircumstances at the

time of the writing.'" (*Bert G. Gianelli Distributing Co.* v. *Beck & Co.*, *supra*, 172 Cal.App.3d at p. 1037.) "If a writing is deemed integrated, extrinsic evidence is admissible only if it is relevant to prove a meaning to which the language of the instrument is reasonably susceptible. [Citations.] The court must preliminarily consider evidence concerning the circumstances surrounding the making of the agreement to decide if the language of the contract, in the light of these circumstances, is fairly susceptible to the offered interpretation." (*Id.* at p. 1037, fn. 4.) Where the parties dispute the inferences to be drawn from the extrinsic evidence but the evidentiary facts themselves are not in dispute, we must review the agreement in the context of the extrinsic evidence and make our independent determination of the meaning of the agreement. (*Medical Operations Management, Inc.* v. *National Health Laboratories, Inc.* (1986) 176 Cal.App.3d 886, 893 [222 Cal.Rptr. 455].)

■ Applying these standards we determine the contract is integrated. Paragraph 6 of the contract provides the agreement "shall supersede all previous agreements by and between Employer and Employee." The meaning of this paragraph is clear on its face and Malmstrom offers no alternative meaning. Contrary to Malmstrom's assertion, the alleged oral agreement occurred before he signed the written agreement. The scope of the contract covers the term of employment and the compensation of the employee. It is unlikely there would be two agreements concerning the term of the employment. Also, as set forth below, we find that the alleged oral agreement is completely inconsistent with the terms of the written contract.

Paragraph 1 of the contract states "Employer . . . shall continue to employ Employee . . . for such a length of time as shall be mutually agreeable" to the parties. Labor Code section 2922 provides in pertinent part "An employment, having no specified term, may be terminated at the will of either party on notice to the other." ■ This section creates a rebuttable presumption that an employment contract is terminable at will. (*Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311, 324 [171 Cal.Rptr. 917].) ■ Three courts have previously found the exact language of this contract creates an employment terminable at will. (*Baker* v. *Kaiser Aluminum and Chemical Corp.* (N.D.Cal. 1984) 608 F.Supp. 1315; *Murray* v. *Kaiser Aluminum & Chemical Corp.* (S.D.W.Va. 1984) 591 F.Supp. 1550, affd. 767 F.2d 912; *Searight* v. *Kaiser Aluminum and Chemical Corp.* (N.D.Ill. 1984) 625 F.Supp. 17.) In *Baker, supra,* at page 1321, the employee contended the written agreement was silent as to whether the agreement could be terminated with or without cause relying on the holding in *Hillsman* v. *Sutter Community Hospitals* (1984) 153 Cal.App.3d 743 [200 Cal.Rptr. 605]. The court in *Baker* held: "[T]he instant agreement, providing specifically that employ-

ment is to continue only so long as 'shall be mutually agreeable to [both parties]' creates a terminable at will arrangement. The identical provision was so interpreted in *Murray* v. *Kaiser Aluminum and Chemical Corporation*, 591 F.Supp. 1500 (S.D.W.Va., 1984): [¶] Giving the words 'mutually agreeable' their general and ordinary meaning, the construction commanded by the language is inescapable—if either party no longer desires the employment to continue, the employment would no longer be 'mutually agreeable' and could be terminated by the party desiring to do so. In short, either plaintiff or Kaiser had the right to unilaterally end the employment relationship. . . ." ▮ ▮ We hold that the contract is a contract for employment terminable at will and that, since the contract is integrated and provides that it supersedes all prior agreements, evidence of an implied agreement which contradicts the terms of the written agreement is not admissible. "There cannot be a valid express contract and an implied contract, each embracing the same subject, but requiring different results." (*Shapiro* v. *Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467, 482 [119 Cal.Rptr. 613].)

▮ Our decision that the wording of the written contract is clear on its face and that it creates a contract of employment terminable at will also answers Malmstrom's argument that evidence of the oral agreement is admissible to interpret the contract under the holding in *Pacific Gas & E. Co.* v. *G. W. Thomas Drayage, etc. Co.* (1968) 69 Cal.2d 33 [69 Cal.Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]. "[I]f the court decides in light of this extrinsic evidence that the contract is not reasonably susceptible to the offered interpretation, then the evidence is irrelevant and inadmissible to interpret the contract." (*Blumenfeld* v. *R. H. Macy & Co.* (1979) 92 Cal.App.3d 38, 45 [154 Cal.Rptr. 652].)

▮ Malmstrom admits the language of paragraph 1 of the written contract could mean that either party is free to terminate the agreement at any time for any reason. He contends for the first time on appeal that it could also mean that if the parties do agree on a length of time of employment, then that term would become the duration of the employment relationship. He asserts that since the language of the contract is reasonably susceptible to both meanings, the accurate meaning can only be determined by taking testimony concerning the intent of the parties as to the meaning of paragraph 1 of the agreement.

To obtain a reversal of a trial court order granting summary judgment, an appellant must show that there was evidence presented in the trial court which raised a material question of fact which precluded the granting of the summary judgment. Malmstrom failed to allege any meaning of the

terms of the written agreement in his first amended complaint. His papers filed in opposition to the motion for summary judgment contain no evidence or legal argument concerning the meaning of the written contract or the intent of the parties in entering the written contract. We decline to consider the meaning of paragraph 1 presented for the first time in Malmstrom's opening brief on appeal. (*Willard* v. *Hagemeister, supra,* 121 Cal.App.3d at p. 414.)

## VII

### *The Alleged 1981 Agreement*

Malmstrom asserts the representations of Kaiser employees in 1981 that the job in Florida was a permanent job create an implied agreement that he would be employed until age 65, conditioned on his satisfactory job performance. He claims such contract terms were upheld in *Cleary* v. *American Airlines, Inc.* (1980) 111 Cal.App.3d 443, 450 [168 Cal.Rptr. 722] and that the court in *Pugh* v. *See's Candies, Inc., supra,* 116 Cal.App.3d at pp. 324-327 held these contracts may be express or implied. Malmstrom also asserts that where independent consideration for the agreement exists, this is sufficient to create a contract for a reasonable term. He relies on the holding in *Rabago-Alvarez* v. *Dart Industries, Inc.* (1976) 55 Cal.App.3d 91, 96 [127 Cal.Rptr. 222]. None of these cases, however, involved a contrary written contract. ▆ The express written agreement of 1977 precludes a contradictory implied promise, as a matter of law. (*Shapiro* v. *Wells Fargo Realty Advisors, supra,* 152 Cal.App.3d 467, 482.)

The only means by which the parties could enter a different agreement in 1981 would be a subsequent oral modification of the terms of the 1977 agreement, a novation or an independent collateral agreement. Malmstrom asserts the implied oral agreement in 1981 meets the requirements contained in Civil Code section 1698.[2]

▆ "'A novation is a substitution by agreement of a new obligation for an existing one with the intent to extinguish the latter.'" (*Meadows* v. *Lee* (1985) 175 Cal.App.3d 475, 482, fn. 1 [221 Cal.Rptr. 22]; Civ. Code, §§ 1530-1532.) Here the record is devoid of evidence that the parties in-

[2]Civil Code section 1698 provides in part: "(b) A contract in writing may be modified by an oral agreement to the extent that the oral agreement is executed by the parties. [¶] (c) Unless the contract otherwise expressly provides, a contract in writing may be modified by an oral agreement supported by new consideration. [¶] (d) Nothing in this section precludes in an appropriate case the application of rules of law concerning estoppel, oral novation and substitution of a new agreement, rescission of a written contract by an oral agreement, waiver of a provision of a written contract, or oral independent collateral contracts."

tended to extinguish the 1977 written contract. There is no mention of cancelling the duties contained in paragraphs two through five of the 1977 written agreement concerning inventions made by the employee or confidential information of Kaiser. We find no new agreement by novation.

■ Nor can there be an independent collateral agreement that Malmstrom would be terminated only for poor job performance. An independent collateral agreement cannot contradict the terms of a prior written contract. (See Cal. Law Revision Com. com., Deering's Ann. Civ. Code, § 1698 (1986 pocket supp.) p. 61, citing *Lacy Mfg. Co.* v. *Gold Crown Mining Co.* (1942) 52 Cal.App.2d 568, 577-578 [126 P.2d 644].)

■ An oral modification of the terms of the written contract allowing termination at will requires new consideration. (Civ. Code, § 1698, subd. (c).) Civil Code section 1605 provides: "Any benefit conferred, or agreed to be conferred, upon the promisor, by any other person, to which the promisor is not lawfully entitled, or any prejudice suffered, or agreed to be suffered, by such person, other than such as he is at the time of consent lawfully bound to suffer, as an inducement to the promisor, is a good consideration for a promise."

Malmstrom claims his move to Florida constitutes this new consideration. The undisputed evidence shows that Malmstrom did not give up employment in California to move to Florida. His job at the San Leandro plant had been eliminated and he received no offer from Kaiser of another job in the state. His move was no more than "a detriment to him incident to preparing himself to accept [Kaiser's] offer—only the same sort of detriment that ordinarily results to any employee who leaves one employment and goes elsewhere to accept another." (*Ferreyra* v. *E. & J. Gallo Winery* (1964) 231 Cal.App.2d 426, 432 [41 Cal.Rptr. 819].) The cases relied on by Malmstrom (*Rabago-Alvarez* v. *Dart Industries, Inc., supra,* 55 Cal.App.3d 91; *Millsap* v. *National Funding Corp.* (1943) 57 Cal.App.2d 772 [135 P.2d 407]; *Bondi* v. *Jewels by Edwar, Ltd.* (1968) 267 Cal.App.2d 672 [73 Cal.Rptr. 494] and *Brawthen* v. *H & R Block, Inc., supra,* 52 Cal.App.3d 139) are all distinguishable in that each plaintiff in those cases gave up promising employment or a thriving business to accept employment with the defendants. We hold the 1977 written agreement was not modified in 1981.

## VIII

### *Estoppel*

In the trial court Malmstrom asserted Kaiser was estopped to rely on the statute of frauds to bar the oral agreements for employment terminable only

for poor performance. This argument was based on the facts surrounding his move to Florida in 1981. The argument is repeated on appeal but we need not deal with it since we do not base our decision on the statute of frauds.

In his opening brief on appeal, Malmstrom adds claims that Kaiser is estopped to assert that the 1977 written agreement is an integrated agreement and that Kaiser is estopped to deny that the 1981 agreement modified or superseded the 1977 agreement. The estoppel to assert integration argument is based on facts contained in his appellate brief concerning the conduct of Kaiser employees with respect to the 1977 written contract. Malmstrom claims Kaiser employees orally represented he would have continued employment without telling him about the written agreement he would be required to sign. These facts do not appear in the trial court record. Questions of estoppel are questions of fact. We are precluded from considerating these factual issues raised for the first time on appeal. (*Ward* v. *Taggart* (1959) 51 Cal.2d 736 [336 P.2d 534]; *Menefee* v. *County of Fresno* (1985) 163 Cal.App.3d 1175, 1182 [210 Cal.Rptr. 99].)

 Malmstrom's argument that Kaiser is estopped to deny the 1981 agreement modified or superseded the 1977 written agreement is based on the doctrines of estoppel by conduct and promissory estoppel. He claims he reasonably relied on the representations that his job in Florida would continue until he reached age 65 and that in reliance on the representations he relocated to Florida at considerable cost and injury to himself.

Malmstrom offered no proof of his reliance on the representations of permanent employment even if his job were eliminated was justified. The record contains two written policies issued by Kaiser for the benefit of its employees which set forth the employees' rights in the event of a lay off due to an economic downturn in business. Malmstrom admits he was aware of these policies and that they applied to him. The record contains no evidence to show his reliance on the representations of permanent employment in Florida was justified. In *Shapiro* v. *Wells Fargo Realty Advisors, supra,* 152 Cal.App.3d at page 482 the court held reliance on representations that contradict a written agreement is not reasonable.

It is undisputed that Malmstrom had no prospects for a job with Kaiser in California when he decided to move to Florida. As a matter of law he cannot show the unconscionable injury necessary to support the application of the doctrine of promissory estoppel. In *Munoz* v. *Kaiser Steel Corp.* (1984) 156 Cal.App.3d 965, 972 [203 Cal.Rptr. 345], the court stated: "There can be no estoppel unless plaintiff will suffer unconscionable injury

or defendant will be unjustly enriched if the oral contract is not enforced. . . . [¶] 'To state a cause of action based on unconscionable injury it is not enough to allege that plaintiff gave up existing employment to work for defendant. [Citations.] He must set forth his rights under the contract given up and show that they *were so valuable that unconscionable injury would result from refusing to enforce the oral contract* with defendant.'" (Italics in original.) Malmstrom has not claimed Kaiser was unjustly enriched and cannot show he was unconscionably injured.

In his reply brief on appeal, Malmstrom seeks to add yet another claim that Kaiser is estopped to claim the 1977 written agreement is not reasonably susceptible to the meaning Malmstrom claims. Points raised for the first time in a reply brief will not be considered. (*Balboa Ins. Co.* v. *Aguirre* (1983) 149 Cal.App.3d 1002, 1010 [197 Cal.Rptr. 250].)

## IX

### *Breach of the Duty of Good Faith and Fair Dealing*

Malmstrom's second cause of action alleges a tort cause of action for breaches of the duty of good faith and fair dealing. Malmstrom asserts four theories of tortious breach of the employment contract.

 First, he urges that his termination after he transferred to Florida breached the duty. In light of this court's holding with respect to the first cause of action, the fact that this claim must fall with that claim requires little discussion. Since we have held that Kaiser could terminate Malmstrom at will, this claim cannot survive.

 Second, Malmstrom claims, at the time of his transfer to Florida, Kaiser withheld from him knowledge concerning its intention to shut down its canning operation. This claim was not alleged in the first amended complaint nor was it argued to the trial court. "The papers filed by the party opposing summary judgment must also be directed to the issues raised in the complaint; therefore, the opposing papers may not create issues outside of the pleadings." (*Fireman's Fund Ins. Co.* v. *City of Turlock* (1985) 170 Cal.App.3d 988, 994 [216 Cal.Rptr. 796].) We will not consider this argument presented for the first time on appeal. (*Fisher* v. *City of Berkeley* (1984) 37 Cal.3d 644, 654, fn. 3 [209 Cal.Rptr. 682, 693 P.2d 261], affd. (1986) 475 U.S. 260 [89 L.Ed.2d 206, 106 S.Ct. 1045].)

 Third, Malmstrom claims that Kaiser's refusal to assist him in locating another position in violation of its express policies constitutes a

breach of its duty of good faith. Kaiser's written policy provides "[E]mployees whose services are no longer needed in their present positions for reasons of Company convenience shall be assisted in locating comparable positions with . . . other Companies." Malmstrom cites Kaiser's refusal to fly him to Oakland to use the relocation service or to look for another job as a breach of its duty. Malmstrom ignores the uncontroverted facts Kaiser was informed he already had another job offer and that Kaiser paid to move him, his wife and their furniture back to California at his request to facilitate his finding another job. The policy provides Kaiser would "assist" him but does not require the company to find him a job with another company. The policy does not set forth what Kaiser must do to help its terminated employees. Malmstrom was given the use of his telephone and secretary. The company policy did not require Kaiser to provide a placement service, although it did set up such a service. Policies themselves are not to be construed as defining standards of good faith and fair dealing. (*Gianaculas* v. *Trans World Airlines, Inc*. (9th Cir. 1985) 761 F.2d 1391, 1395.) We do not find Kaiser breached its duty to "assist" Malmstrom.

Fourth, Malmstrom asserts Kaiser violated its duty by denying it had a contract to employ him until he retired. Since we have found the contract allowed him to be terminated at will, the holding in *Seaman's Direct Buying Service, Inc*. v. *Standard Oil Co*. (1984) 36 Cal.3d 752 [206 Cal.Rptr. 354, 686 P.2d 1158], that the bad faith denial of the existence of a contract breaches the duty of good faith and fair dealing, is of no help to him.

Finally, even if there were a basis for concluding that the employment contract were not one terminable at will, but, as pleaded in plaintiff's first cause of action, a contract to employ Malmstrom until retirement subject only to discharge for cause, the evidence before the trial court on the motion for summary judgment is uncontroverted that such cause existed.

As stated in *Clutterham* v. *Coachman Industries, Inc*. (1985) 169 Cal.App.3d 1223 [215 Cal.Rptr. 795], "[e]ven when the implied promise of continued employment is found, it is only a promise not to terminate the employment without '". . . some good reason."'" Here, as in *Clutterham*, Kaiser presented undisputed evidence of the depressed condition of its aluminum can business and its business decision to reduce its staff with the result that Malmstrom's services were no longer needed. Kaiser had a ""'"fair and honest cause or reason, regulated by good faith"'"' to terminate Malmstrom. (*Id.* at p. 1227.)

The judgment is affirmed.

Kline, P. J., and Rouse, J., concurred.