Filed 6/19/14  Pecanic v. Sumitomo Elec. Interconnect Products CA4/1
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ROBERT A. PECANIC, JR.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>SUMITOMO ELECTRIC INTERCONNECT PRODUCTS, INC.,<br><br>    Defendant and Respondent. | D063450<br><br><br><br>(Super. Ct. No. 37-2012-00050946-CU-BC-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy M. Casserly, Judge.  Affirmed.

Law Office of Doug C. Griffith and Doug C. Griffith for Plaintiff and Appellant.

Squire Sanders, Nathan Lane III and Stacie D. Yee for Defendant and Respondent.

This breach of contract and wrongful termination case comes to us on appeal from a judgment entered on an order sustaining a demurrer without leave to amend.  Plaintiff Robert A. Pecanic, Jr. (Pecanic), individually and doing business as Aerotech Rep Group (Aerotech), alleges that defendant Sumitomo Electric Interconnect Products, Inc. (SEIP) breached a joint venture agreement and employment contract between the parties.

Pecanic's First Amended Complaint (FAC) does not allege facts, which, if proven, would establish the existence of either a joint venture agreement or an employer-employee relationship. Accordingly, the trial court correctly sustained SEIP's demurrer for failure to state a claim. Also, as we explain, the trial court did not abuse its discretion in sustaining the demurrer without leave to amend.

I.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

A. *Parties*

Pecanic resides in Orange County, California. His relationship with defendant SEIP began in 1991 and ended in 2010. The nature of the various relationships between Pecanic and SEIP is at the core of the dispute between the parties.

SEIP is a California corporation engaged in the business of manufacturing and supplying electrical components for use in military and civilian aircraft. Components SEIP manufactures include the Crimp Splice (CS) and the Solder Termination Sleeve (STS) range of products.

On July 6, 2004, Pecanic signed a first sales representative agreement (FSRA) with SEIP. Pecanic signed as "CEO" of Aerotech, although Aerotech was just a fictitious business name and not a corporation. Under the terms of the FSRA, Pecanic agreed to act as the sales representative for SEIP in a designated territory. SEIP agreed to pay Pecanic a commission on sales of its products. The FSRA also expressly contemplated that Pecanic would provide SEIP engineering advice and consultation. Either party could terminate the contract on 30-days' notice. The FSRA also contained an integration clause

2

which merged into the FSRA any prior contracts between the parties, and "constitute[d] the entire contract between SEIP and [Pecanic] . . . amended only by a writing . . . ."

In 2006, Pecanic filed a fictitious business name statement with the Orange County Clerk Recorder registering Aerotech as the name under which he was doing business. The fictitious business name statement states that Pecanic started doing business as Aerotech in 2001.

In 2008, Pecanic filed a second fictitious business name statement with the Orange County Clerk Recorder.  The second fictitious business name statement stated that Spectech Inc. (Spectech), a California corporation, was doing business as Aerotech. Pecanic executed the fictitious business name statement as the CEO of Spectech.  At the time Pecanic filed the second fictitious business name statement, Spectech was a suspended corporation.[1]

In 2010, Pecanic signed a second sales representative agreement (SSRA) with SEIP as "CEO" of Aerotech.  However, the SSRA identified Aerotech as a corporation. The terms of the SSRA were largely the same as the FSRA.  The SSRA included an integration clause similar to the FSRA.

---

[1]     Spectech Inc., a California corporation, was created in 1995.  Pecanic was designated as its CEO in 1997.  On July 21, 2004, Spectech Inc.'s privileges, powers, and rights were suspended by the Secretary of State for failure to file the required Statement of Information.  Spectech Inc. remained suspended from 2004 until it was revived on August 29, 2012.

3

B. *The Dispute*

According to Pecanic, during the course of his relationship with SEIP, he learned SEIP was knowingly selling defective products to its customers, including to United States government contractors. He contends SEIP concealed these defects from its customers and made numerous false statements and certifications. Pecanic alleges that in 2010, when he raised his concern with SEIP, SEIP terminated his services unlawfully and in breach of contract.

In January 2012, based on Pecanic's conclusion SEIP was engaged in unlawful activity, he initiated a separate qui tam lawsuit against SEIP on behalf of the United States government in district court for the District of Columbia.[2]

C. *The Original Complaint*

In February 2012, Pecanic brought this action against SEIP in the trial court. The initial complaint stated nine causes of action against SEIP. Pecanic's first four causes of action—breach of sales representative agreement, breach of joint venture agreement, breach of covenant of good faith and fair dealing, and intentional interference with contractual relations—were brought by Pecanic with respect to his rights under the SSRA.

---

[2] The trial court granted SEIP's request for judicial notice of the qui tam lawsuit pending in federal court. The qui tam suit has since been moved from the District of Columbia district court to the Southern District of California. (2013 U.S. Dist. LEXIS 27913.)

4

The remaining five causes of action—breach of employment contract, retaliation, wrongful termination in violation of public policy, defamation, and intentional infliction of emotional distress—were brought by Pecanic with respect to rights he alleged arose outside the SSRA. Pecanic alleged that separate and distinct from the two written sales representative agreements, he entered into both an oral joint venture agreement with SEIP and an employee relationship with SEIP. He alleged that the separate joint venture and employment agreements arose out of conduct by the parties and oral communication between them. SEIP demurred to all causes of action in the complaint.

Copies of the FSRA and SSRA were not attached to the FAC, and the trial court found the plaintiffs did not otherwise allege the terms of the sales representative contracts. The trial court also found that the specific terms of the separate joint venture agreement and the separate employment contract were not alleged. Thus, the trial court sustained with leave to amend SEIP's demurrer to six causes of action related to the SSRA, the oral joint venture agreement and the employment agreement.

The demurrer as to Pecanic's defamation claim was also sustained, with leave to amend. The trial court determined that the complaint failed to set forth verbatim the alleged defamatory statements made by SEIP's managers.

The trial court overruled SEIP's demurrers on two causes of action—retaliation and wrongful termination in violation of public policy. The trial court found Labor Code § 1102.5 and Government Code § 12653 did not preclude recovery on those claims as a matter of law.

5

D. *The First Amended Complaint*

Pecanic timely filed a First Amended Complaint (FAC) with six causes of action: breach of the SSRA, breach of a joint venture agreement, breach of an employment contract, retaliation, wrongful termination in violation of public policy and defamation. Pecanic attached copies of the FSRA and SSRA to the FAC.

In support of his joint venture claim, Pecanic added two examples of products he developed under the alleged joint venture. He also added the following allegation:

"29. Under each of these agreements, PLAINTIFF and SEIP agreed that PLAINTIFFS would receive compensation for their design, engineer [*sic*], development, and customer development work in the form of commissions in the same amounts as those specified in the then-operative Sales Representative Agreement, to be taken from profits from sales. PLAINTIFFS would also share with SEIP any losses associated with a given agreement, including the loss of PLAINTIFFS' development cost and other out-of-pocket expenses."

Pecanic amended his employment claim to add a paragraph which alleged:

"The 'for cause' term to which the employment contract was subject was created by, among other things, statements by SEIP managers to PECANIC to the effect that PECANIC had a long future with SEIP and that his 2010 Sales Representative Agreement was going to be revised so as to expand his sales territory; as well as the fact that PECANIC'S compensation, taking primarily the form of commissions on sales developed by PECANIC, could not be realized if

6

SEIP was able simply to terminate PECANIC before sales that were based on PECANIC's long-term efforts were generated or completed."

With respect to the employment relationship, Pecanic also realleged that: "34. Based on their conduct and oral communications, SEIP and PECANIC were in an employer-employee relationship according to which PECANIC could be terminated only for cause."

Pecanic's retaliation and wrongful termination claims repeated the allegations set forth in his original complaint.

Finally, Pecanic amended his defamation claim to add details about the recipients of the allegedly defamatory material. The new defamation claim alleged that certain managers of SEIP falsely and maliciously told third party distributors that Pecanic was lying, had no knowledge of any product defects and was not to be trusted. However, the FAC, like the original complaint, failed to set forth the allegedly defamatory statements verbatim.

SEIP demurred to the FAC. This time the trial court granted SEIP's demurrer on all six causes of action *without leave to amend*. The trial court found that Pecanic did not have standing to sue for the breach of the SSRA. The trial court also found that Pecanic had not pled the elements of a joint venture in sufficient detail and that the terms of the SSRA precluded the existence of a separate employment contract between Pecanic and SEIP. Finally, the trial court stated that Pecanic was required to set forth verbatim the contents of any alleged defamatory statements.

The trial court entered judgment dismissing the complaint and Pecanic filed a timely notice of appeal.

E. *The Appeal*

Pecanic does not contest the trial court's finding that he does not have standing to sue for breach of the SSRA.[3]  However, Pecanic asserts the trial court did err in dismissing his remaining five causes of action.

II.

STANDARD OF REVIEW

Whether a demurrer to a complaint without leave to amend was properly sustained involves two separate standards of review on appeal.  (*Cantu v. Resolution Trust Corp.* (1992) 4 Cal.App.4th 857, 879).  We first review the FAC de novo to determine if the complaint alleges enough facts sufficient to state a cause of action under any legal theory.  (*McCall v. PacificCare of California, Inc.* (2001) 25 Cal.4th 412, 415).  We then review the denial of leave to amend for abuse of discretion.  (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081 ["If the court sustained the demurrer without leave to amend . . . we must decide whether there is a reasonable possibility the plaintiff could cure the defect with an amendment . . . .  The plaintiff has the burden of proving that an amendment would cure the defect."].)

_____

[3]     SEIP has requested that we take judicial notice of a subsequent action Spectech Inc. filed against SEIP, *Spectech, Inc. v. Sumitomo Electric Interconnect Products, Inc.*, San Diego Superior Court case number 37-2013-00028957-CU-BC-NC. (Cal. Rules of Court, rule 8.252; Evid. Code § 452(d).).  Pecanic does not oppose the request, and we grant it.

8

On appeal, the reviewing court must treat the demurrer as admitting all properly pleaded material facts; however, this does not include contentions, deductions, or conclusions. (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966-967).

In addition to allegations in the complaint, the reviewing court must properly consider evidentiary facts which appear in exhibits attached to the complaint. (*Satten v. Webb* (2002) 99 Cal.App.4th 365, 375). Furthermore, "[a]ny allegations in the complaint which are inconsistent with facts set out in an unambiguous written instrument, incorporated by reference, may be stricken." (*Fundin v. Chicago Pneumatic Tool Co.* (1984) 152 Cal.App.3d 951, 955 (*Fundin*).)

When a demurrer subject to appeal is to an amended complaint, the reviewing court may properly consider factual allegations in the plaintiff's prior complaints. (*People ex rel. Gallegos v. Pacific Lumber Co.* (2008) 158 Cal.App.4th 950, 957 [noting that " ' "[a] plaintiff may not . . . avoid [factual allegations] by contradictory averments[] in a superseding, amended pleading" ' "].)

III.

DISCUSSION

A.  *Joint Venture Agreement Between Pecanic and SEIP*

1.  Legal Principles

In order to properly plead the existence of a joint venture, the plaintiff must allege the following elements: (1) " ' "the members must have joint control over the venture" ' "; (2) " ' "they must share the profits of the undertaking" ' "; and (3) " ' "the members must

9

each have an ownership interest in the enterprise." ' " (*Simmons v. Ware* (2013) 213 Cal.App.4th 1035, 1051-1052.)

Importantly, the plaintiff must also allege the defendant in fact agreed to enter into the joint venture. (*Bustamente v. Intuit, Inc.* (2006) 141 Cal.App.4th 199, 211-213 (*Intuit*).) In *Intuit*, the plaintiff alleged that the defendant promised to form and launch " ' "Intuit Mexico." ' " (*Id*. at p. 207). He alleged terms granting him 25 percent ownership, and defendant a maximum of 19.9 percent ownership. The defendant later completely terminated their relationship with the plaintiff and denied that it had ever reached an agreement with the plaintiff. (*Ibid*.) Although the plaintiff alleged some terms of the alleged joint venture, on summary judgment, the trial court found they were not specific enough to be enforceable. (*Id*. at p. 213). The Court of Appeal affirmed. The court found that no joint venture existed because the plaintiff had shown no "meeting of the minds as to the essential structure and operation of the alleged joint venture . . . ." (*Intuit*, *supra*, at p. 215.) In particular, the court rejected the plaintiff's contention that the parties' discussion of terms was sufficient to show an agreement to those terms: "The alleged agreement cannot withstand scrutiny even if it is considered as a composite of specific terms. First, rather than being definite, all of the following terms—which [plaintiff] represents as material—were actually unsettled both before and after the alleged commitment by [defendant]: the form and amount of [defendant's] compensation; the extent, duration, and nature of his management role, if any; the amount of [defendant's] royalty; the equity percentage held by him, 'the management team,' [defendant], and outside investors; and the liquidity path for both [plaintiff] and

10

investors." (*Id*. at p. 211.) The court found the parties, at best, had formed an unenforceable " 'agreement to agree.' " (*Id*. at p. 213.) "We must conclude that the undisputed facts here show no meeting of the minds as to the essential structure and operation of the alleged joint venture, even if there was agreement on some of the terms. '[T]he failure to reach a meeting of the minds on all material points prevents the formation of a contract even though the parties have orally agreed upon some of the terms, or have taken some action related to the contract.' " (*Id*. at p. 215.)

2. Analysis

In this case, Pecanic contends that the allegations in the FAC meet the requirements of a joint venture. In the FAC, Pecanic states he and SEIP "entered into numerous oral agreements properly characterized as joint venture agreements" and that he "developed protective tubings for headsets . . . [and] a material called R120TW." (Appellant's Opening Brief Pages 7, 8.) Pecanic further states he and SEIP agreed he would "receive compensation . . . to be taken from sales . . . [and] would also share with SEIP any losses associated with a given agreement."

We agree with SEIP and the trial court that these allegations do not adequately plead the elements necessary of a joint venture. First, Pecanic has failed to plead joint control. While the FAC alleges Pecanic had certain job responsibilities, there are no allegations that would lead to an inference of joint control. Second, Pecanic has failed to plead any ownership interest in the subject of the asserted joint enterprise. The FAC only alleges that Pecanic would receive compensation for his efforts, not that he had any

11

ownership interest in the venture.  Finally, Pecanic has failed to plead the existence of an agreement to share profits outside of his compensation or commission.

In this case, there are far fewer allegations of joint venture than were presented in *Intuit*.  No specific terms of the joint venture are alleged, let alone facts which would suggest that SEIP had agreed to those terms.  Hence, Pecanic has failed to properly allege a joint venture.

B.  *Employer-Employee Relationship Between SEIP and Pecanic*

1.  Legal Principles

As the court in *Wal-Noon Corp. v. Hill* (1975) 45 Cal.App.3d 605 (*Wal-Noon*) stated, there cannot be two overlapping contracts, one express, and one implied, simultaneously:   "There cannot be a valid, express contract and an implied contract, each embracing the same subject matter, existing at the same time. [Citations.]  The reason for the rule is simply that where the parties have freely, fairly and voluntarily bargained for certain benefits in exchange for undertaking certain obligations, it would be inequitable to imply a different liability and to withdraw from one party benefits for which he has bargained and to which he is entitled." (*Wal-Noon*, at p. 613.)  In *Wal-Noon* the court reversed a judgment in favor of the plaintiffs which had been entered on an equitable theory, nothwithstanding the existence of a written lease under which relief was not available.

In addition to the more general rule set forth in *Wal-Noon*, where, as here, a contract contains a merger or integration clause, our courts will enforce it.  (See *Malmstrom v. Kaiser Aluminum & Chem. Corp.* (1986) 187 Cal.App.3d 299, 315

12

(*Malmstrom*).)  In *Malmstrom* the express terms of the plaintiff's employment contract provided his employment was at will; in light of the merger clause, the court found that the employment contract was integrated and prevented the plaintiff from showing that an implied agreement terminable for cause existed.  (*Id*. at pp. 315-316.)  The court stated: "The scope of the contract covers the term of employment and the compensation of the employee.  It is unlikely there would be two agreements concerning the term of the employment."  (*Id*. at p. 315.)

2.  Analysis

We reiterate ownership of the name Aerotech is unclear and inadequately briefed by the parties.  On appeal, Pecanic does not contend he owns the name, but implicitly concedes Spectech owns it.  However, this confusion with respect to the status of Aerotech does not permit us to ignore the other factual allegations of Pecanic's original complaint or the terms of the FSRA and SSRA attached to the FAC.  (See *People ex rel. Gallegos v. Pacific Lumber Co.*, *supra*, 158 Cal.App.4th at p. 957.)

In the original complaint, notwithstanding the fact Aerotech is a nominal party to the agreements, Pecanic alleged *he* entered into both the FSRA and SSRA as an individual: "During the period in or about 1991 through the year 2010 SEIP and PLAINTIFFS[4] acted pursuant to one or more written Sales Representative Agreements . . . ."  In addition, we note the FAC alleges the conduct and communication which gave rise to the alleged oral employment contract took place during "the course of

---

4     The term PLAINTIFFS could only mean Pecanic.

13

an ongoing relationship," Pecanic had with SEIP and during periods in which first the FSRA and then SSRA were in force. Importantly, the record shows that only Pecanic acted on behalf of Aerotech, both in executing the FSRA and SSRA and performing duties under the agreements.

In sum, while on the one hand the record shows Pecanic was the only individual acting on behalf of Aerotech in making and performing the parties' written agreements, on the other hand Pecanic contends that during the period of those agreements, a separate implied employment agreement arose between him and SEIP. We cannot accept that the circumstances disclosed in the record permit an allegation of such an implied employment contract between Pecanic and SEIP.

Merger clauses appear in both the FSRA and SSRA and do not allow for any other relationship between the parties: "This agreement constitutes the entire contract between SEIP and representative . . . amended only by a writing.") Paragraph 5.3 of the 2004 Sales Representative Agreement clearly states both parties to the agreement contemplated services involving an engineering consulting role as an extension of the sales representative's sales role.

Given these provisions Pecanic cannot show that an employment contract for the development of two related products, to be performed by the only individual acting on or performing either of the written agreements, falls completely outside of the engineering consulting subject matter contemplated in the agreements or the express merger clauses in those agreements. If we accepted Pecanic's contention that there was an implied employment agreement between him and SEIP, there would be two contracts embracing

14

the same subject matter: an employee relationship and a sales representative contract, both to be performed by the same individual, Pecanic. The law does not permit such inconsistent express and implied contracts. (*Wal-Noon*, *supra*, 45 Cal.App.3d at p. 613; *Malmstrom*, *supra*, 187 Cal.App.3d at p. 315.)

Because Pecanic cannot allege he was in a separate employment relationship with SEIP, all three causes of action premised on the existence of an employer-employee relationship between SEIP and Pecanic—breach of employment contract by termination without cause, retaliation, and wrongful termination in violation of public policy, are defective.

C. *Defamation*

Pecanic's sixth cause of action for defamation is against SEIP and certain unknown managers of SEIP. The relevant portion of the FAC alleges:

"DEFENDANTS, and in particular SEIP managers, falsely, maliciously and without privilege told third-party distributors with whom PECANIC worked, including Vice President of Whitmor/Wirenetics Mark Lee and attendees at one or more SAE committee meetings, that PECANIC was lying and unknowledgeable about the product defects, misrepresentations and concealments alleged herein, and was otherwise not to be trusted . . . ."

SEIP argued, and the trial court agreed, that the defamatory matter had to be set forth verbatim. (See *Hecimovich v. Encinal School Parent teacher* Organization (2012) 203 Cal.App.4th 450, 461, fn.1). Pecanic argues a plaintiff may set forth either the exact words *or the substance of* an allegedly defamatory statement. (See *Comstock v. Aber*

15

(2012) 212 Cal.App.4th 931, 948 (*Comstock*)).[5]  He claims that the FAC satisfies this lower standard.  We disagree.

There may be narrow exceptions to the requirement to plead defamatory matter verbatim.  (See, e.g., *Comstock*, *supra*, 212 Cal.App.4th p. 948.)  However, "the dispositive question is whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact."  (*Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375, 385.)  In order to evaluate whether a statement is actionable slander, a court needs to consider the totality of circumstances, including the language used and the context in which the statement was made.  (*Ibid*. [citing to *Baker v. Los Angeles Herald Examiner* (1986) 42 Cal.3d 254, 260-261.])  For example, in *Fletcher v. San Jose Mercury News* (1989) 216 Cal.App.3d 172, 191 (*Fletcher*), the court found the defendant was using potentially inflammatory language in order to get the plaintiff to respond.  "Where 'potentially defamatory statements are published in a . . . setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered as statements of fact may well assume the character of statements of opinion.' "  (*Ibid*.)

---

5      "It is sometimes said to be a requirement, and it certainly is the common practice, to plead the exact words or the picture or other defamatory matter. The chief reason appears to be that the court must determine, as a question of law, whether the defamatory matter is on its face or capable of the defamatory meaning attributed to it by the innuendo. Hence, the complaint should set the matter out verbatim, either in the body or as an attached exhibit." (5 Witkin, Cal. Procedure (5th Ed. 2008) Pleading, § 739, p. 159.)

In this case, the substance of the alleged defamatory statements simply indicates SEIP's managers disagreed with Pecanic about the quality of SEIP's products. Without a pleading which sets forth verbatim the alleged defamatory statements, the trial court correctly concluded that Pecanic's allegations in the FAC are insufficient for a court to determine as a matter of law whether the utterances were actionable slander.

D. *Leave to Amend*

Having determined de novo that the complaint fails to state a cause of action, we now move to the issue of the trial court's denial of leave to amend. As we have mentioned, we review the trial court's decision not to grant leave to amend under an abuse of discretion standard.

For three out of the five claims on appeal, Pecanic had a clear opportunity to amend his complaint. Pecanic contends that, as a practical matter, he had no opportunity to amend the other two claims. This is because the trial court overruled a demurrer on two causes of action in the original complaint, but sustained a demurrer on the same complaints in the FAC. Hence, Pecanic argues that he had no meaningful opportunity to amend after notice that some causes of action were causes of action that were defective.

Pecanic's argument is not persuasive. The two causes of action on which demurrer was overruled under the original complaint, namely retaliation and wrongful termination in violation of public policy, are predicated on the existence of an employment relationship. The demurrer on the breach of employment contract was sustained with leave to amend in the original complaint. In considering SEIP's demurrer to the FAC, the

17

trial court found that the employment relationship was still not properly pled. It follows that the retaliation and wrongful termination claims would not survive.

Hence, the trial court did not abuse its discretion in not granting leave to amend a second time. It was reasonable for the trial court to conclude that a leave to amend was unwarranted in this situation because Pecanic has not indicated how the defects can be cured by amendment. (See *Cooper v. Leslie Salt Co.* (1969) 70 Cal.2d 627, 636.) Indeed, according to Pecanic, if his alleged theories were disproven after discovery, "[Pecanic] may be entitled to relief under other legal theories, based on the development of the pled facts through discovery."

While it is true that the cause of action on the face of the complaint need not be accurate in order to overcome a demurrer, without a prima facie showing that the legal system offers a remedy, a lawsuit cannot progress to discovery. (*Cf. Quelimane Co. v. Stewart Title Guar. Co.* (1998) 19 Cal.4th 26, 38 [noting "[i]f the complaint states a cause of action under any theory, regardless of the [theory], that aspect of the complaint is good against a demurrer"].) In short, Pecanic suggests that he would be unable to cure any deficiency in his pleading until after discovery.

Hence, the trial court reasonably concluded that leave to amend was not warranted.

DISPOSITION

The judgment of the trial court dismissing Pecanic's complaint is affirmed.  SEIP to recover its costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

HUFFMAN, J.

McINTYRE, J.