999 F.2d 543
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Mary E. GRIGSBY, Plaintiff-Appellant,
v.
UNIVERSAL FOODS CORPORATION; Does I Through X, Defendants-Appellees.
 No. 91-55864.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 6, 1992.
Decided July 2, 1993.
 
 1
 Before O'SCANNLAIN and RYMER, Circuit Judges, and ZILLY,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Grigsby appeals from the district court's grant of summary judgment in favor of Universal Foods ("Universal") on her breach of employment contract, breach of the implied covenant of good faith and fair dealing, and pregnancy discrimination claims. We affirm the grant of summary judgment on the pregnancy discrimination claim, and reverse on the breach of contract and breach of the implied covenant of good faith and fair dealing claims.
 
 
 4
 The appellant Mary Grigsby was employed by the appellee Universal Foods under a written employment contract for a five-year term. Grigsby claims that prior to the expiration of the written contract, she and Universal entered into an oral contract that provided that she would continue to be employed after the written contract expired. An implied term of the oral contract, claims Grigsby, is that she would be terminable only for cause. Eighteen days before the written contract was to expire, Universal notified Grigsby that it did not intend to renew her contract. Grigsby claims that Universal made this decision because she was pregnant. Grigsby brought three claims against Universal, all under California law: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; and (3) pregnancy discrimination.
 
 
 5
 In granting summary judgment in favor of Universal, the court found that Grigsby (1) had not raised a genuine issue of material fact as to the existence of the new contract and thus could not maintain an action for either breach of contract or breach of an implied covenant of good faith and fair dealing, and (2) was not "terminated" and therefore could not maintain a pregnancy discrimination. We review a grant of summary judgment de novo. Kruso v. International Tel. & Tel. Corp., 872 F.2d 1416, 1421 (9th Cir.1989), cert. denied, 110 S.Ct. 3217 (1990).
 
 
 6
 * To survive Universal's motion for summary judgment on the breach of contract claim, Grigsby had to present evidence from which a jury could conclude that an oral contract existed that provided that she would continue to be employed after the expiration of the written contract; that an implied term of the oral contract was that she was terminable only for cause; and that Universal breached the contract.
 
 
 7
 * We first consider whether Grigsby has presented a genuine issue as to the existence of an oral contract between herself and Universal providing that she would continue to be employed. On summary judgment, we consider the evidence in the light most favorable to the nonmoving party.
 
 
 8
 Grigsby presents colorable evidence of the following. In May of 1988, Universal decided to relocate from Wisconsin to New York and requested Grigsby's assistance in setting up the new plant. Grigsby was not obligated to provide this assistance, however, because her contract with Universal provided that her duties under the contract "shall be performed out of a factory located in the State of Illinois or the Wisconsin area unless such factory is moved to another location with the prior consent" of Grigsby. Grigsby informed Gochnauer, the president of the cheese division, that she would not participate in the move if her employment was going to end in January of 1990. Although Grigsby requested a new written employment contract, she accepted Gochnauer's assurances that a written contract was not necessary because at the end of the five-year agreement she "would become an employee of Universal Foods like any other employee of Universal Foods."
 
 
 9
 A year later, Grigsby again requested assurances from Gochnauer that Universal would continue to employ her. She again requested a written contract, and Gochnauer again reassured her that a written contract was unnecessary. Gochnauer stated that the letter of August 25, 1988, which provided that two of Grigsby's performance bonuses were to come due after the expiration of her written contract, was proof that Universal intended to keep Grigsby on after the expiration.
 
 
 10
 The district court called Gochnauer's statements "oblique," and concluded that Gochnauer had merely expressed hope of a continuing relationship. According to the district court, such statements were insufficient to form a contract. We disagree with the district court's characterization of the exchanges between Gochnauer and Grigsby. Gochnauer's statements were direct answers to pointed questions from Grigsby. On at least one occasion, Universal promised continued employment to induce her to perform services that she was not already obliged to provide. Viewing the evidence in the light most favorable to Grigsby, we conclude that a jury could find that Gochnauer's statements constituted a promise that she would continue to be employed after the expiration of her written contract.[1]
 
 B
 
 11
 We next consider whether Grigsby has presented a genuine issue as to the existence of an implied term in the contract providing that she would be terminable only for cause. Under California law, employment contracts are presumed to be at will. Cal.Labor Code § 2933. However, this presumption can be overcome by showing that the employer and employee entered into an express or implied contract that provided that the employee was terminable only for just cause. Foley v. Interactive Data Corp., 765 P.2d 373, 387 (Cal.1988). California courts have looked to a variety of factors in determining whether an implied contract of continued employment has arisen, including the personnel policies or practices of the employer; the employee's longevity of service; actions or communications by the employer reflecting assurances of continued employment; salary increases and bonuses; consistent promotions; and the practices of the industry. Id. at 387-88; Pugh v. See's Candies, 171 Cal.Rptr. 917, 927 (Cal.App.1981). In order to be the basis of an implied contract, the employer's conduct must "give rise only to an employee's 'reasonable expectation that he would not be discharged except for good cause.' " Gardner v. Charles Schwab, 267 Cal.Rptr. 326, 331 (Cal.App.1990). The employer's subjective intent in performing the acts is not considered. Id. Whether the implied contract exists is a question of fact for the jury, and California courts have been exceedingly unwilling to take the question of whether such an agreement exists away from the jury. See Luck v. Southern Pac. Transp., 267 Cal.Rptr. 618 (Cal.App.1990); Walker v. Blue Cross of Cal., 6 Cal.Rptr.2d 184 (Cal.App.1992); Seubert v. McKesson Corp., 273 Cal.Rptr. 296 (Cal.App.1990); McClain v. Great American Ins. Co., 256 Cal.Rptr. 863 (Cal.App.1989).
 
 
 12
 Grigsby has presented colorable evidence that Universal had a policy, as reflected in its practices and termination guidelines, to terminate its long-term employees only for cause. In his deposition, Gochnauer stated that he could remember terminations only for cause over the seven years he had worked at Universal; that he was certain that for ten-year employees, the chairman of the corporations reviewed all involuntary terminations; and that he remembered one instance where an attempted involuntary termination was rejected by the chairman of Universal because the reasons given were insufficient.
 
 
 13
 Universal's written Termination Guidelines generally corroborate Gochnauer's oral testimony. The Guidelines state: "It is the policy of the Company to handle voluntary and involuntary terminations in an equitable and consistent fashion. In the case of an involuntary termination of a Company employee, this decision must not be made on an arbitrary basis and must be reviewed in advance by the appropriate level of division/corporate management and by the Corporate Human Resources Department." (Emphasis added.) The Guidelines go on to state: "All involuntary terminations of Company employees with ten or more years of continuous service must be reviewed with the Vice President, Human Resources and with the President prior to effecting any termination action." As Grigsby had nine years' seniority before the start of her five-year contract, she had provided more than ten years' continuous service at the time she was terminated.
 
 
 14
 California courts have given much credence to claims that practices and policies of an employer not to terminate for cause give rise to a reasonable expectation and thus an implied contract that the employer will follow the policies. The court in Foley stated: "[A]n allegation of breach of written 'Termination Guidelines' implying self-imposed limitations on the employer's power to discharge at-will may be sufficient to state a cause of action for breach of an employment contract." Foley, 765 P.2d at 388. Other courts have reiterated this principle. See, e.g., Kern v. Levolor Lorentzen, Inc., 899 F.2d 772 (9th Cir.1990) (applying California law); McClain v. Great American Ins. Co., 256 Cal.Rptr. 863 (Cal.App.1989). Because evidence supports Grigsby's claim that Universal had a policy to terminate only for cause, a jury could find that an implied term in Grigsby's contract was that she was terminable only for cause.[2]
 
 C
 
 15
 We finally consider whether Grigsby has presented sufficient evidence from which a jury could conclude that Universal had breached the contract by terminating her without just cause. Once the employee has shown that the terms of the employment contract provide that the employee is terminable only for just cause, the burden shifts to the employer to come forward with evidence of a justification for the termination. The employee must then "attack the employer's offered explanation, either on the ground that it is pretextual ... or on the ground that it is insufficient to meet the employer's obligations under contract or applicable legal principles." Pugh, 171 Cal.Rptr. at 927. The employee "bears, however, the ultimate burden of proving that he was terminated wrongfully." Id.
 
 
 16
 Whether Universal had good cause to terminate Grigsby involves a factual dispute for the jury to resolve. Universal contends that it refused to renew Grigsby's contract because it had no operations in Southern California where Grigsby had moved, and no available positions in its operations throughout the state. Although Grigsby had worked out of her home and had traveled on Universal's behalf before the contract expired, Universal claimed that it no longer had any work for Grigsby to do in California at the time she was fired. However, Gochnauer reiterated after she moved to California the promise that she would continue to be employed upon the expiration of the written promise. Gochnauer knew that Universal had no operations in California before he reiterated the promise. Similarly, no one at Universal protested when Grigsby moved to California. Instead, she continued to do her job, as she had always done, away from the home office. Moreover, after she was fired, Universal immediately hired her as an independent contractor to do exactly the type of work that she had been doing before she was fired. We cannot conclude as a matter of law that Universal's proffered reason was not pretextual.
 
 
 17
 Because Grigsby has presented sufficient evidence to survive Universal's motion for summary judgment on the breach of contract claim, we reverse.
 
 II
 
 18
 Grigsby claims that in breaching the contract, Universal breached an implied covenant of good faith and fair dealing arising out of the contract. "Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." Foley, 765 P.2d at 389 (quoting Restatement 2d (Contracts) § 205). The remedies for its breach are the same as those for breach of contract. Id. at 389-401.
 
 
 19
 The district court found that Grigsby did not present a genuine issue as to the existence of a contract between herself and Universal for the period after the expiration of the written contract, and thus held that the action for breach of an implied covenant of the alleged contract could not lie. Since we conclude that Grigsby has presented evidence from which a jury could find that Universal breached a contract that provided that Grigsby would be terminable only for cause, we must conclude that a jury could find that Universal breached the implied covenant of good faith and fair dealing contained in the contract. We therefore reverse the district court's grant of summary judgment in favor of Universal on this ground as well.
 
 III
 
 20
 Grigsby claims that Universal terminated her because she was pregnant, and sues for pregnancy discrimination under California law. California has adopted the presumptions developed under federal law "to achieve a fair determination of the 'elusive factual question of intentional discrimination' " where, as here, the employee does not have direct evidence of discrimination. Mixon v. Fair Employment and Housing Comm'n, 237 Cal.Rptr. 884, 890 (Cal.App.1987) (internal citation omitted). The employee must first establish a prima facie case; the burden then shifts to the employer to offer a legitimate reason for the action; the burden then shifts to the employee to prove that the offered reason is pretextual. Id.
 
 
 21
 To make out the prima facie case, the employee must prove the following four elements: (1) He or she belongs to a protected class; (2) his or her job performance was satisfactory; (3) an adverse employment decision was made against him or her; and (4) "others not in the protected class were retained in similar jobs, and/or his [or her] job was filled by an individual of comparable qualifications not in the protected class." Id. Here, Grigsby does not provide enough evidence to raise a genuine issue as to the fourth element. She has presented no evidence to show that she was replaced, and has presented no evidence to show that there were any employees similarly situated to herself. The only evidence that she presents is her own declaration that no one else was terminated when she was. This by itself is insufficient to satisfy the fourth element.[3]
 
 
 22
 Since Grigsby is unable to make out the prima facie case, we affirm the district court's grant of summary judgment in favor of Universal on the pregnancy discrimination claim.
 
 
 23
 Each party shall bear their own costs.
 
 
 24
 AFFIRMED IN PART and REVERSED IN PART.
 
 ZILLY, District Judge, Dissenting:
 
 25
 I respectfully dissent from Parts I and II of the Court's Opinion. There was no contract, express or implied, which gives rise to a claim for breach of contract or implied covenant of good faith and fair dealing. I join with the majority opinion in Part III, concluding Grigsby is unable to make out a prima facie case for pregnancy discrimination under California law. I would therefore affirm the district court's grant of summary judgment on all grounds.
 
 
 26
 The appellant Mary E. Grigsby ("Grigsby") was employed by the appellee Universal Foods Corporation ("Universal") under a written employment contract for a five-year term ending February 1, 1990,[1] E.R. 48. The written contract provided that Grigsby's duties would be performed at the company's plant in the state of Illinois or Wisconsin unless the factory was moved to another location with the prior consent of Grigsby. The contract also contained the following provision:
 
 
 27
 Modification of Agreement. This Agreement contains the entire agreement and supersedes any and all other agreements, written and oral, expressed or implied, pertaining to the subject matter hereof. It may not be changed orally but only by written instrument signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.
 
 
 28
 In 1987, Grigsby announced that she was getting married and moving to Rye, New York. Universal agreed that Grigsby could perform her duties out of her home in Rye, New York. Grigsby subsequently moved to New York.
 
 
 29
 In 1988, Universal decided to move its production of Lorraine Cheese to Ogdensburg, New York. Prior to the move, Universal requested Grigsby's assistance in setting up the new plant. Grigsby responded that she would not participate in the move if her employment was going to end in January 1990. Grigsby asked Richard Gochnauer, the president of Universal's cheese division, for a new written contract. Gochnauer told Grigsby that she "would not need a written employment agreement because no one had them. Grigsby Decl. p 4 at E.R. 43. As a result of these discussions, Universal agreed to modify her job responsibilities, to increase her salary and to participate in the management incentive program. The terms of these agreements were set forth in an August 25, 1988 letter from Gochnauer to Grigsby. E.R. 73. The letter provided in part that "if your (Grigsby's) employment is terminated before the end of fiscal 1990 for any reason other than gross misconduct" then special incentive awards would be paid to her.
 
 
 30
 A year later, Grigsby again requested assurances from Gochnauer that Universal would continue to employ her after the end of her written contract term. She again requested a written contract which was again refused. According to Grigsby, she was verbally assured by Gochnauer that the company "intended to continue my (her) employment." Grigsby Decl. p 4; E.R. 43. According to Gochnauer, he told Grigsby that Universal did not give written employment contracts to its employees and that when her contract expired she would then be in the "same boat with the rest of us at-will employees." Decl. of Gochnauer, p 20, 21; E.R., Exhibit D.
 
 
 31
 Prior to 1990, Grigsby and her husband moved to California. Universal's cheese division did not have any plant in California. Thereafter, she continued to perform her primary duties from her California residence by telephone and mail. She also performed public relations duties requiring appearances in other parts of the Country.
 
 
 32
 On January 12, 1990, Grigsby was told by David Nolan, her immediate superior at the time, that her employment would end on January 31, 1990. Decl. Grigsby, p 6; E.R. 43A. According to Grigsby, the only reason given for the discharge was that her written employment contract expired and that the company was facing budgetary constraints. Decl. Grigsby, p 7; E.R. 43A.
 
 
 33
 Grigsby brought this action against Universal for breach of employment contract, breach of implied covenant of good faith and fair dealings, and pregnancy discrimination. The action was brought in diversity and the trial court, applying California law, granted Universal summary judgment on all three claims and dismissed plaintiff's action.
 
 
 34
 The majority opinion correctly holds that to survive Universal's motion for summary judgment on the breach of contract claim, Grigsby had to present evidence from which a jury could conclude that an oral contract existed that she would continue to be employed after the expiration of the written contract;[2] that an implied term of the oral contract was that she was terminable only for cause; and that Universal breached the contract.
 
 
 35
 Grigsby has failed to present a genuine issue of fact as to the existence of an oral contract that she would continue to be employed after her written contract expired and could only be terminated for cause. Rather, the undisputed evidence is that on two occasions Grigsby asked for a new contract beyond the five-year agreement, which was refused each time. She was told that she would become an employee "like any other employee" and she understood this to mean an "at will" employee. Grigsby's admissions in her declaration are fatal to her case. Grigsby states, in part, that
 
 
 36
 4. During both conversations with Mr. Gochnauer, he assured me that the company intended to continue my employment, that my employment was as secure as everyone else and in fact more so because I was so versatile and could do any number of jobs. He told me that Universal needed my services for the relocation to succeed. He said I would not need a written employment agreement because no one had them.
 
 
 37
 E.R. 43.
 
 
 38
 The letter of August 25, 1988 does not provide support for Grigsby's claim that she was given assurances of continued employment that could only be terminated for cause. Rather, the letter provides just the opposite. It states, in part, that "[i]f your employment is terminated by Universal before the end of fiscal 1990 for any reason other than gross misconduct ..." she is to receive certain incentive benefits. This is uncontroverted direct evidence that she could be terminated without cause upon the payment of certain incentive payments not at issue in this case. The trial judge was correct in his well-reasoned order granting summary judgment when he stated that the letter "guarantees nothing as to future employment." Order, p. 6.
 
 
 39
 The California Labor Code, Section 2922, provides as follows:
 
 
 40
 An employment, having no specified term, may be terminated at the will of either party on notice to the other. Employment for a specified term means an employment for a period of greater than one month.
 
 
 41
 This creates a statutory presumption that employment relationships are at-will and are therefore "terminable at any time without cause." Foley v. Interactive Data Corp., 47 Cal.3d 654, 677, 680, 765 P.2d 373 (1988); Malstrom v. Kaiser Aluminum and Chemical Corp., 187 Cal.App.3d 299, 315, 231 Cal.Rptr. 820 (1986). In Foley, the California Supreme Court reaffirmed the at-will employee doctrine and found the employment relationship to be at-will unless the employee can prove the existence of an express or implied agreement to limit the employer's power to dismiss him or her, e.g. by requiring that the termination be based only on good cause. Foley, 47 Cal.3d at 677. This Court, sitting in diversity, must apply California law to plaintiff's claims. Under California law, this Court must find an employment relationship to be at-will unless the plaintiff proves otherwise. Burton v. Security Pacific Nat. Bank, 197 Cal.App.3d 972, 977, 243 Cal.Rptr. 277 (1988). In this case, Grigsby has failed to present any issue of fact as to the existence of an oral contract for a term of employment after February 1, 1990.
 
 
 42
 Grigsby also contends that she has presented a genuine issue of fact as to the existence of an implied contract providing that she would be terminable only for cause. Under California law, an employee can bring an action on an implied contract requiring good cause for termination upon a showing of actions or assurances of continued employment. Foley, 47 Cal.3d at 680 (citing Pugh v. See's Candies Inc., 116 Cal.App.3d 311, 327, 171 Cal.Rptr. 917 (1981)). The Foley court emphasized, however, that implied agreements to terminate only for good cause are not to be lightly inferred: "Oblique language will not, standing alone, be sufficient to establish [an implied] agreement." Id. at 681 (citing Pugh, 116 Cal.App.3d at 329). Rather, an employment contract purporting to establish a permanent employer-employee relationship through the use of oblique language is terminable at the will of either party:
 
 
 43
 Ordinarily, a contract for permanent employment, for life employment, for so long as the employee chooses, or for other terms indicating permanent employment, is interpreted as a contract for an indefinite period terminable at the will of either party.
 
 
 44
 Ruinello v. Murray, 36 Cal.2d 687, 689, 227 P.2d 1251 (1951); Hillsman v. Sutter Community Hosps. of Sacramento, 153 Cal.App.3d 743, 7509, 200 Cal.Rptr. 605 (1984) (language concerning mere hope or expectancy is not enough to constitute promise of permanent employment); Drzewiecki v. H & R Block, Inc., 24 Cal.App.3d 695, 702-03, 101 Cal.Rptr. 169 (1972).
 
 
 45
 Gochnauer told Grigsby that after her written contract expired, that she "gets to join the boat with the rest of us." This oblique language does not support an implied contract under California law. Grigsby was terminated because her position was eliminated. The vague assurances of Gochnauer of continued employment provided the plaintiff with only an invitation to "join the boat" like other employees and to become an at-will employee. Grigsby was not provided with a life jacket for this boat and should not be rescued by this Court. Because I find no contract, express or implied, it is not necessary to reach the issue of whether Grigsby was terminated for cause.
 
 
 46
 Grigsby also claims that Universal breached an implied covenant of good faith and fair dealing arising out of the contract. Because I would find that Grigsby did not present a genuine issue as to the existence of a contract for the period after the expiration of the written contract, it is not necessary to consider this argument.
 
 
 
 *
 The Honorable Thomas S. Zilly, United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Finding that a rational jury could conclude that Gochnauer and Grigsby entered into an oral contract does not render the integration clause in the written contract meaningless. As the district court correctly concluded, if an oral contract was entered into, it should not be considered a modification of the written contract, but instead a new separate contract, covering a period not contemplated by the written contract, and with completely different terms. The alleged oral contract is not inconsistent with the written one. The written contract does not provide that Grigsby's employment would end upon the expiration of the five-year term; in fact, the contract was entirely silent as to the terms and conditions of Grigsby's employment after the expiration of the written contract
 Grigsby's position is different from that of the claimant in Tollefson v. Roman Catholic Bishop of San Diego, 268 Cal.Rptr. 550 (Cal.App.1990). The alleged implied agreement in Tollefson directly contradicted a term of the express written agreement. The written agreement stated that there was no obligation to renew; the claimant argued that an implied contract arose which provided that the contract must be renewed unless there was good cause not to do so. The employee in Tollefson did not claim that she had entered into an express oral contract renewing her written contract.
 Moreover, the implied contract at issue in Tollefson was barred by the parole evidence rule. The employee in Tollefson claimed that the agreement arose over the course of the entire seven-year period for which she was employed, and hence she claims it arose well before the final one-year agreement was signed. Since the parole evidence rule precludes evidence of prior or contemporaneous agreements, it would apply to Tollefson and not to Grigsby's claims. See also Slivinsky v. Watkins-Johnson Co., 20 Cal.Rptr. 585 (Cal.App.1990); cf. Wagner v. Glendale Adventist Med. Center, 265 Cal.Rptr. 412, 418 (Cal.App.3d Dist.1989) ("When one party has, through oral representations and conduct or custom, subsequently behaved in a manner antithetical to one or more terms of an express written contract, he or she has induced the other party to rely on the representations and conduct or custom. In that circumstance, it would be equally inequitable to deny the relying party the benefit of the other party's apparent modification of the written contract.").
 
 
 [2]
 The disclaimer in the Termination Guidelines providing that the Guidelines themselves do not form a contract does not diminish the force of this analysis. Although the disclaimer precludes the Guidelines themselves from being considered a contract, the Guidelines are evidence of what the actual procedures and policies of the company are; a jury may conclude that the actual policies and practices of the company were the basis of an implied in fact contract. See Levolor Lorentzen, 899 F.2d at 776
 
 
 [3]
 Grigsby claims that "[a] prima facie case of discrimination can be established by proximity between protected activity and discharge." The case she cites for this proposition, however, is a retaliatory discharge case. See Miller v. Fairchild Indus., 97 F.2d 727 (9th Cir.1986). We decline to extend the proximity in time test outside the retaliatory discharge context
 
 
 [1]
 Grigsby had worked for Lorraine Cheese, a family business since 1972 in Pittsfield, Illinois. When Universal acquired Lorraine Cheese on January 23, 1985, Grigsby and Universal entered into the five-year written agreement, providing for employment
 
 
 [2]
 Grigsby does not contend that there was an agreement to modify the written agreement. This would not be permitted under the Modification of Agreement clause of the contract. Rather, she contends that there was an oral agreement for employment to begin at the end of the written contract