64 Cal.App.4th 356 (1998)
DANIEL S. CRUEY, Plaintiff and Appellant,
v.
GANNETT COMPANY, INC., et al., Defendants and Respondents.
Docket No. A075459.
Court of Appeals of California, First District, Division Four.
May 29, 1998.
*360 COUNSEL
Tarkington, O'Connor & O'Neill, John D. O'Connor and Laura E. Malkofsky for Plaintiff and Appellant.
Littler, Mendelson, Fastiff, Tichy & Mathiason, Lindbergh Porter, Jr., and Michael Mankes for Defendants and Respondents.
[Opinion certified for partial publication.[*]]
OPINION
SALDAMANDO, J.[*]
Appellant Daniel S. Cruey (Cruey) appeals dismissal of his case following entry of an order granting summary judgment of his complaint for wrongful termination from his position as general manager of the San Francisco market of his former employer, respondent Gannett Company, Inc., doing business as USA Today (Gannett), a newspaper publishing and distribution enterprise.[1] Causes of action for libel and slander claims against Gannett and respondent Christine Lacy (Lacy), an employee formerly supervised by Cruey, were also summarily adjudicated. Cruey *361 asserts that the trial court erred in finding that there were no triable issues of fact as to any cause of action.

I. Standard of Review

(1) An appellate court reviewing a judgment of dismissal after an order granting summary judgment must review the record de novo to determine whether the moving party is entitled to summary judgment as a matter of law or whether there exist genuine issues of material facts. (Lee v. Crusader Ins. Co. (1996) 49 Cal. App.4th 1750, 1756 [57 Cal. Rptr.2d 550].)
Code of Civil Procedure section 437c, subdivision (o)(2), mandates a burden-shifting which requires defendant to show a complete defense to the action or that one or more elements of the cause of action cannot be established. If defendant makes this showing, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists as to that cause of action or defense thereto.

II. Background

Cruey had been with Gannett since 1983 and had received several promotions including his latest to general manager in 1991. Cruey did not have a formal employment contract which covered termination; he claims to have had an implied agreement not to be terminated except for good cause. He was terminated in December 1994, nearly three months after Lacy, a regional manager supervised by him, filed complaints with both the federal Equal Employment Opportunity Commission (EEOC) and Gannett alleging sexual harassment by Cruey. Gannett's stated reason for termination was that Cruey's "`style of management of employees and philosophy were inconsistent with [Gannett's] goals and policies.'"
Cruey claims that Gannett's stated reasons for firing him were pretextual and violated Gannett's employee guidelines which call for progressive discipline and prohibit age and sex discrimination. He asserts that the impetus behind his sudden termination was Gannett's "calculated decision" that it would be less detrimental for the company to defend a lawsuit brought by a discharged white male executive than to defend a lawsuit for sexual harassment brought by a woman who already had retained a high-profile attorney to represent her.
Gannett argues that Cruey was an at-will employee who was terminable without good cause. Gannett points out that 11 months after being promoted to general manager, a promotion which apparently required that he move from Philadelphia to the Bay Area, Cruey signed a 24-page "Tenant in Common Agreement" (Agreement) with Gannett which subsidized $60,000 of the purchase price of Cruey's new home in recognition of his move to a *362 more expensive housing market. Paragraph 3, entitled "Co-ownership and Division of Profits" (original emphasis), contained an acknowledgment in subdivision (c) that Cruey's employment was at-will and terminable at any time by Gannett without cause.[2] Cruey admitted in his deposition that he read Paragraph 3 when he executed the Agreement.
Gannett further argues that even assuming existence of an implied contract requiring good cause, Cruey failed to raise a triable issue of fact as to whether good cause existed. Instead, in Gannett's view the evidence demonstrated that Gannett made a good faith decision which was both within its managerial discretion and consistent with the law.

III. Cruey Is an At-will Employee

(2) In relevant part, Labor Code section 2922 provides that "[a]n employment, having no specified term, may be terminated at the will of either party on notice to the other...." This section has been construed in Foley v. Interactive Data Corp. (1988) 47 Cal.3d 654 [254 Cal. Rptr. 211, 765 P.2d 373] to create a presumption of at-will employment unless superseded by a contract, express or implied, which limits the employer's right to discharge the employee. (At p. 665.) Apart from consideration and express terms, other factors which can be used to ascertain the existence and scope of an employment agreement include (1) the personnel policies or practices of the employer, (2) the employee's longevity of service, (3) actions or communications by the employer reflecting assurances of continued employment, and (4) the practices of the industry in which the employee is engaged. (Foley v. Interactive Data Corp., supra, 47 Cal.3d at p. 680.)
When an employment agreement has both express and implied terms which are contradictory, the express terms control. (Shapiro v. Wells Fargo Realty Advisors (1984) 152 Cal. App.3d 467, 482 [199 Cal. Rptr. 613]; Rochlis v. Walt Disney Co. (1993) 19 Cal. App.4th 201, 211-212 [23 Cal. Rptr.2d 793], disapproved on other grounds in Turner v. Anheuser-Busch, Inc. (1994) 7 Cal.4th 1238, 1251 [32 Cal. Rptr.2d 223, 876 P.2d 1022].) This is true even if the written terms are not contained in an integrated employment *363 contract. (Camp v. Jeffer, Mangels, Butler & Marmaro (1995) 35 Cal. App.4th 620, 630 [41 Cal. Rptr.2d 329] (Camp), citing Gerdlund v. Electronic Dispensers International (1987) 190 Cal. App.3d 263, 272 [235 Cal. Rptr. 279].)[3] For example, in Camp a husband and wife hired by a firm acknowledged in writing a short time after hiring that their employment was at-will and terminable at any time without good cause. When they were later terminated from their jobs they filed a lawsuit alleging a violation of an implied-in-fact contract requiring good cause. Citing Shapiro, the Camp court found that there could not exist at the same time both a valid express contract and implied contract each embracing the same subject but requiring a different result. Under such circumstances, the express written acknowledgment controlled even though it had not been contained in an integrated employment contract. (Camp, supra, 35 Cal. App.4th at p. 630.)
(3) In the case at bench, the express at-will employment term was not contained in an integrated employment contract but was in the subsequently executed Agreement, which related to Cruey's employment in that it provided an additional financial benefit to him as part of a job promotion within the company. In this respect, the benefit conferred is similar to stock option benefits also containing at-will hiring clauses which are made available to employees at some later period after hiring. In Shapiro, a stock option with an at-will proviso had been provided a year after hiring; in Rochlis, the stock option had been provided two years later. In each case, the express at-will term in the stock option was held to be an express term of employment which could not be rebutted by allegations of an implied-in-fact contract asserting contrary terms.
It is conceivable that an at-will proviso in a written document which was not issued simultaneously or contemporaneously with the hiring of an employee would be so peripherally or tangentially related to employment that it would be unfair to charge an employee with notice of its terms. It is also possible that the subsequent conduct of the parties could be such as to manifest a clear intent that the express terms of the contract not be controlling. But neither situation is presented here. In the present case, the express at-will acknowledgment was contained in a property ownership agreement which confirmed an employment-related housing subsidy within one year after Cruey was promoted to a new position within the company. Cruey, in his deposition, admitted that he read it when he signed the Agreement. Cruey *364 further admitted that no one at Gannett told him that the Agreement was not intended to have the stated force and effect. Under these circumstances Cruey was bound by its terms.[4]
Cruey points out that despite a finding that the express at-will proviso precluded consideration of a contrary implied contract, the Camp court, "alternatively," proceeded to consider whether the allegations raised by the Camps created a triable issue of fact as to the existence of an implied contract. (Camp, supra, 35 Cal. App.4th at p. 630.)[5] Cruey urges us to perform the same "alternative" analysis in the case at bench. However, there is no need to do so in the absence of substantial evidence that the parties did not intend the written express term to be controlling.
Even after giving full weight to Cruey's evidence, as is required in reviewing summary judgment, Cruey fails to present substantial evidence that the express at-will provision in the Agreement was superseded or negated by an implied-in-fact agreement to terminate him only for good cause. In support of his position, Cruey cites a "Shape Up" manual which stated employees could not be fired at-will, and therefore advised supervisory personnel to document employee performance or conduct in the event of wrongful discharge litigation resulting from termination. Additionally, Cruey alleges that Gannett failed to follow an admitted policy of progressive discipline of employees. In fact, Gannett had written to EEOC that "it is corporate policy to institute a Performance Improvement Plan for the employee...."
In response, Gannett points out that, in addition to the express provision in the Agreement, it issued a "Manager's Guide," presumably received by Cruey,[6] which expressly provided that employment with Gannett was at-will. Gannett argues that the "Shape Up" manual which was included in the "Manager's Guide" is simply a written version of oral instructions to "build a file" which was found insufficient to alter an employee's at-will status in Davis v. Consolidated Freightways (1994) 29 Cal. App.4th 354 [34 Cal. Rptr.2d 438]. Although the vice-president of circulation, Russell Ford, *365 who was Cruey's supervisor, stated in his deposition that Cruey would be entitled to the benefits of the "Shape Up" manual, Cruey acknowledged that no one had ever told him that he could be terminated only for good cause, or only after following a specified disciplinary procedure.
Cruey's failure to generate a triable issue as to an implied-in-fact agreement not to terminate except for good cause, which is sufficient to overcome a contrary express provision, moots any need to examine whether Gannett acted in good faith when it terminated Cruey. (4) However, even if we were to undertake such a review, Gannett has produced evidence of Cruey's work and after-work activity which substantiates Gannett's stated reason for terminating Cruey  a style of management and philosophy inconsistent with Gannett's policy and goals.[7] Given that Cruey was a high-ranking managerial employee in charge of policing Gannett's sex discrimination and harassment policies, Gannett must of necessity be allowed substantial scope in the exercise of subjective judgment in determining that such conduct was undesirable. (Crosier v. United Parcel Service, Inc. (1983) 150 Cal. App.3d 1132, 1139-1140 [198 Cal. Rptr. 361], disapproved on other grounds in Foley v. Interactive Data Corp., supra, 47 Cal.3d at pp. 688, 700, fn. 42.)[8]

IV.-VI.[*]
.... .... .... .... .... .... .... .

VII. Cruey Failed to Raise Triable Issues of Libel and Slander Against Gannett

(5) Cruey brought slander and libel causes of action based on communications made by Gannett and Lacy to third parties alleging that Cruey was terminated for real or threatened sexual harassment. The trial court found that the evidence proffered by Cruey in support of libel and slander claims against Gannett was inadmissible hearsay and granted summary adjudication on the basis that Cruey failed to establish triable issues of fact as to the elements of (1) publication to third parties of (2) untrue statements. Cruey's proffered evidence consisted of a declaration from a Gannett employee, Gary Allen, who stated that one of Gannett's Los Angeles managers had told him *366 of an announcement made at a confidential staff meeting by Gannett's Los Angeles office general manager, Fritz Stellrecht, that Cruey was terminated for sexual harassment. The Allen declaration was relevant to demonstrate that Stellrecht's statement was published or communicated to a third party; i.e., that a Gannett employee was falsely accusing Cruey of being terminated for sexual harassment to other Gannett employees. It was not being offered to show that the statement itself was true; to the contrary, Cruey's interest was in showing that the statement was false.
Gary Allen's declaration reported two separate out-of-court statements. The first was General Manager Stellrecht's statement at the meeting; the second was the unidentified Los Angeles manager's report of Stellrecht's statement made to Allen, the declarant. Under Evidence Code section 1201, where a statement involves multiple levels of hearsay, each level must satisfy a hearsay exception in order for the entire statement to be admissible. Cruey asserts that both statements qualify as authorized admissions under Evidence Code section 1230.
Whether or not a statement is an authorized admission is to be determined under the substantive law of agency, not the law of evidence. (O'Mary v. Mitsubishi Electronics America, Inc. (1997) 59 Cal. App.4th 563, 570 [69 Cal. Rptr.2d 389], citing Mendez, Cal. Evidence (1993) § 7.03, p. 134, fn. 13.)[11] Stellrecht's "high rank within the hierarchy" of Gannett employees as general manager of the Los Angeles office probably is sufficient without more to establish that he was authorized to speak on behalf of the company. Cruey offered no exception to the hearsay rule which would permit admitting the substance of Stellrecht's statement as recounted by the unidentified Los Angeles manager to Allen. Thus, the trial court properly excluded Allen's declaration since the authorized admission exception to hearsay was only established as to one, but not both of the statements.[12]
As a result, Cruey's causes of action for libel and slander against Gannett fail for lack of admissible evidence.

VIII. Cruey Raised a Triable Issue of Libel and Slander Against Lacy

(6a) Cruey's slander and libel causes of action against Lacy stem from statements she made in a complaint she filed with the EEOC on September *367 6, 1994, and two weeks later in her similar complaint made in a letter dated September 22, 1994, to Gannett's "Human Resources Department." Each writing accuses Cruey of sexual harassment and other improprieties. Lacy argues that a complaint to an investigative body, whether within the company itself, or to an outside governmental entity should be privileged and not subject a complainant to liability for slander and/or libel. (7) Cruey responds that even if privileged, Lacy waived the privilege because she did not raise it as a defense in her answer to the complaint.
Although the general rule is that a privilege must be pled as an affirmative defense (Tschirky v. Superior Court (1981) 124 Cal. App.3d 534, 538 [177 Cal. Rptr. 357]), recent California authority suggests an exception where the complaint alleges facts indicating applicability of a defense or where the affirmative defense is raised during a summary judgment proceeding. (Rowland v. County of Sonoma (1990) 220 Cal. App.3d 331, 335 [269 Cal. Rptr. 426]; Unigard Ins. Group v. O'Flaherty & Belgum (1995) 38 Cal. App.4th 1229, 1239 [45 Cal. Rptr.2d 565].) This view is in accord with federal case law, which permits an affirmative defense to be raised for the first time in a summary judgment motion in the absence of a showing of prejudice. (Camarillo v. McCarthy (9th Cir.1993) 998 F.2d. 638, 639 [California state prison officials permitted to raise affirmative defense of qualified immunity in summary judgment motion].)[13] Given the long-standing California court policy of exercising liberality in permitting amendments to pleadings at any stage of the proceedings (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 1126, pp. 581-582) and of disregarding errors or defects in pleadings unless substantial rights are affected (Buxbom v. Smith (1944) 23 Cal.2d 535, 542 [145 P.2d 305]), we believe that a party should be permitted to introduce the defense of privilege in a summary judgment procedure so long as the opposing party has adequate notice and opportunity to respond. Here, the defense of privilege was asserted in the opening brief in the motion for summary judgment. Cruey took the opportunity to respond by arguing the inapplicability of the privilege. He has not shown that he was prejudiced by the process.
(8) California law recognizes two types of privileged communications  communications which are absolutely privileged and communications which are qualifiedly or conditionally privileged. If absolutely privileged, there is no liability even if the defamatory communication is made with actual malice. If the privilege is only conditional or qualified, a finding of malice will prevent the communication from being found privileged. (5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, §§ 498, 519, pp. 585, 609.)
*368 Civil Code section 47 (section 47) codifies these privileges. (Slaughter v. Friedman (1982) 32 Cal.3d 149, 158 [185 Cal. Rptr. 244, 649 P.2d 886].) Subdivision (b) of section 47 makes a communication absolutely privileged if made, inter alia, in a judicial proceeding (subd. (b), cl. (2)), in any other official proceeding authorized by law (subd. (b), cl. (3)), or in the initiation or course of any other proceeding authorized by law and reviewable by mandate (subd. (b), cl. (4)) with certain exceptions not applicable in the present case. Subdivision (c) makes conditionally privileged a communication concerning job performance made without malice.
(6b) Section 47, subdivision (b), clause (3), the absolute privilege for "any other official proceeding authorized by law" applies to the complaint filed by Lacy with the EEOC. Subdivision (b), clause (3) has been interpreted to protect communications both to or from governmental officials which may precede the initiation of formal proceedings. (Slaughter v. Friedman, supra, 32 Cal.3d at p. 156.) Under 42 United States Code section 2000e-5(f), an employee must file a complaint with EEOC before proceeding to initiate a lawsuit. Thus, Lacy's complaint to EEOC was absolutely privileged even if made maliciously, and summary adjudication was proper as to the EEOC complaint.
(9) The September 22, 1994, letter addressed to Terry Sullivan, Gannett's vice-president of human resources in which Lacy formally complains that Cruey, her supervisor, sexually discriminated and harassed her does not qualify as a complaint made to a governmental authority. The parties concede that Gannett's internal department of human resources is the appropriate intracompany channel for receiving such complaints; however it is a private not a public entity and does not fall within the official duty privilege of section 47, subdivision (b), clause (3), which has never been applied to private individuals. (Slaughter v. Friedman, supra, 32 Cal.3d at p. 156.) Although the absolute privilege in subdivision (b), clause (4) of section 47 covering other authorized proceedings reviewable by mandate is available for communications between private parties (Moore v. Conliffe (1994) 7 Cal.4th 634, 653 [29 Cal. Rptr.2d 152, 871 P.2d 204]),[14] no evidence was presented by either party that Gannett's internal complaint proceeding was authorized by law and reviewable by mandate. Likewise, there was no evidence that the human resources department letter of complaint was a prelitigation communication made with some relationship to an anticipated lawsuit such as to bring it within the litigation privilege set forth in section *369 47, subdivision (b), clause (2). (Rubin v. Green (1993) 4 Cal.4th. 1187, 1194-1195 [17 Cal. Rptr.2d 828, 847 P.2d 1044].)
The conditional privilege set out in subdivision (c) of section 47 potentially applies in the present case because Lacy's letter of complaint to Gannett pertains to a subject of mutual interest to Gannett and its employees, an accusation of workplace harassment and discrimination. (Deaile v. General Telephone Co. of California, supra, 40 Cal. App.3d at p. 849.) Lacy cites Miller v. Servicemaster by Rees (1992) 174 Ariz. 518 [851 P.2d 143], which found a complaint of sexual harassment by a female employee to her employer to be conditionally privileged in the absence of malice. Although Lacy does not cite any California authority directly on point, Lacy argues that California, like Arizona, has a public policy to protect employees from harassment in the workplace based on the provisions of the California Constitution, article I, section 8, and Government Code sections 12940, subdivision (h)(1), and 12940, subdivision (i). Further, this public policy is articulated in Rojo v. Kliger (1990) 52 Cal.3d 65, 90 [276 Cal. Rptr. 130, 801 P.2d 373], which finds "a fundamental public interest in a workplace free from the pernicious influence of sexism." (Original italics.)
We conclude that complaints to employers about workplace harassment should be privileged. To hold otherwise would have a chilling effect on an employee's right to be free from sexual harassment or discrimination in the workplace by exposing the employee to the risk of litigation as a consequence to seeking enforcement of this right. However, none of Lacy's authority stand for the proposition that a complaint to a private employer, even if made through the proper channels,[15] is absolutely privileged. At best, it is conditionally privileged subject to a finding of malice. Although it may appear incongruous to cloak a complaint made to an official body like EEOC with absolute immunity, but to deny such protection to the selfsame complaint made through proper channels to a private employer who shares the same interest in ferreting out workplace misconduct; nonetheless, our Supreme Court has made clear that creation or expansion of existing statutory privileges involve matters of public policy more appropriately deferred to legislative judgment. (Slaughter v. Friedman, supra, 32 Cal.3d at p. 158.) Accordingly, we find Lacy's complaint to Gannett's department of human resources is conditionally privileged subject to a finding of malice.
Lacy points out that Cruey has failed to raise a triable issue as to malice because the substance of what she accuses Cruey of doing is true and her accusations are at worst an exaggeration and embellishment of actual *370 events.[16] Lacy admits reacting angrily when Cruey confronted her with negative job evaluations that she would not allow Cruey to threaten her job and her family but knew how to protect her job. In fact, she filed her complaint with Gannett the following day[17] Nevertheless, Lacy contends that such a response was to be expected and does not establish malice. Whether or not Lacy's comments and conduct are sufficient to establish malice is ultimately for the trier of fact. Cruey has raised a triable issue as to whether Lacy's written complaint to Gannett was made maliciously. Summary adjudication of Cruey's causes of action for defamation was improperly granted.

IX. Conclusion

Judgment in favor of Gannett is affirmed. Judgment in favor of Lacy on the causes of action for libel and slander is reversed only insofar as those claims arise from her written complaint of September 22, 1994, to Gannett's department of human resources. In all other respects the judgment as to Lacy is affirmed.
Each party to bear its own costs of appeal.
Hanlon, P.J., and Poche, J., concurred
NOTES
[*] Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts IV., V. and VI.
[*] Judge of the San Francisco Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.
[1] The verified complaint alleged causes of action against Gannett for age and sex discrimination, breach of contract, intentional interference with prospective economic advantage, and causes of action for slander and libel against both Gannett and Lacy.
[2] Paragraph 3(c) of the Agreement states: "The Crueys acknowledge that Daniel Cruey's employment by Gannett is at will and may be terminated at any time in Gannett's sole discretion without cause. Nothing herein shall be construed as evidencing, specifying, determining, modifying or amending the terms of Daniel Cruey's employment by Gannett, nor be deemed as implying any contract or agreement by Gannett to employ Daniel Cruey for any specified term or on any specific conditions."

Additionally, paragraph 14(c) of the Agreement states: "Merger and Integration. It is agreed that all written and oral understandings and agreements heretofore made between the parties respecting the matters covered by this Agreement and their respective interests and rights in the Property are merged in this Agreement. This Agreement fully and completely expresses the agreement of the parties, and there is no representation, warranty or agreement except as specifically and expressly set forth herein." (Original emphasis.)
[3] Gerdlund did not involve an issue of contradictory express and implied contractual terms, but concerned itself with the proper use of parol evidence in interpreting a termination clause in a written employment agreement. The Gerdlund court found it error to admit parol evidence because the agreement was fully integrated. However, even if not fully integrated, the termination language was plain and unambiguous and not reasonably susceptible to a different interpretation.
[4] Cruey had been employed with Gannett for about eight years before his promotion to general manager of the San Francisco cluster. Even if that prepromotion period were subject to an implied contract requiring good cause for termination, the written express contract superseded all prior oral agreements. (Malmstrom v. Kaiser Aluminum & Chemical Corp. (1986) 187 Cal. App.3d 299, 314 [231 Cal. Rptr. 820].)
[5] The Camp court found that the factors which plaintiff had relied upon; namely, (1) evidence of promises for job placement elsewhere within the firm, (2) a change of employment status from temporary to permanent, and (3) evidence that the plaintiff had quit another job to take this one were insufficient, in any event, to establish an implied contract to terminate only for cause.
[6] Cruey indicated he was not sure he had received a copy of this and stated that the first time he recalls seeing the guide is when it was produced by Gannett in discovery.
[7] Gannett cites basically undisputed evidence of Cruey's attendance with other Gannett employees in an after-work bachelor party involving Cruey's possible involvement in lewd conduct with a stripper, attendance with other male employees at a striptease show in Phoenix, at least one accusation of sexual harassment by a former employee, and calling Lacy a "bitch" and a "prude" during a staff meeting and also to individual employees.
[8] A recent California Supreme Court case, Cotran v. Rollins Hudig Hall Internat., Inc. (1998) 17 Cal.4th 93, 107 [69 Cal. Rptr.2d 900, 948 P.2d 412], held that the governing standard in determining termination for wrongful misconduct requires only a review of the employer's good faith investigation of the complaint, not a determination that the employee in fact committed the misconduct.
[*] See footnote ante, page 356.
[11] O'Mary was a wrongful termination case based on age discrimination. The trial court improperly excluded a triple hearsay statement which the appellate court, after a careful analysis, found should have been admitted since a hearsay exception existed for each level. The opinion presents a thoughtful discussion of the topic of authorized admissions.
[12] Because the evidentiary ruling was correct, we need not consider Gannett's other argument that the in-house statements were communications to interested parties and consequently privileged under Civil Code section 47, former subdivision (3) (now recodified as Civ. Code, § 47, subd. (c)). (Deaile v. General Telephone Co. of California (1974) 40 Cal. App.3d 841, 849 [115 Cal. Rptr. 582] [holding that an employer's publication to employees of reasons for another employee's termination is privileged as it serves the employer's economic interest in clarifying its employment policies].)
[13] One federal circuit has declined to follow this view while acknowledging that five other circuits have adopted it. (Harris v. Secretary, U.S. Dep. of Veterans Affairs (D.C. Cir.1997) 126 F.3d 339, 344 [326 App.D.C. 362].)
[14] For example, this provision has been found to cover complaints or other communications made during the grievance procedure process set up as part of the collective bargaining agreement between a union and a private employer which is reviewable by mandate. (Wallin v. Vienna Sausage Manufacturing Co. (1984) 156 Cal. App.3d 1051, 1056 [203 Cal. Rptr. 375].)
[15] Cruey admits that Lacy's complaint to Gannett's department of human resources was an appropriate channel of complaint.
[16] Lacy accused Cruey of performing oral sex on a prostitute at a company party. Cruey responded that he was present at a bachelor party attended by male employees of Gannett at a private residence where a stripper performed. He did not commit any sex acts but "may have touched a penis-like object" used by the stripper. Lacy further accused Cruey of organizing a visit by company employees to a Phoenix striptease club. Cruey admitted dropping employees off at the club which they had decided to attend and entering briefly for 10 to 15 minutes before leaving them there. Lacy also accused Cruey of participating in a "dumping session" with other employees concerning Lacy. Cruey denied being present. Finally, Lacy accused Cruey of referring to her in front of coworkers as a "`God-damn bitch and a prude'" when she complained about the attendance by Cruey and other managers at the Phoenix club. Cruey admitted saying "something to the effect" that Lacy was acting like a bitch and a prude.
[17] On one occasion, Lacy wrote to Cruey that his threats to her were also threats to her household and family and she would not stand by and allow that to happen. At a September 21, 1994, meeting to review a final work performance warning issued by Cruey to Lacy, she learned that her father had just died and screamed words to the effect that, although she might not be able to do anything about her father, she knew how to protect her job. The following day she filed her letter of formal complaint with Gannett.