Filed 6/3/21  Lankster v. Compton Unified School Dist. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| VELMA LANKSTER,<br><br>        Plaintiff and Appellant,<br><br>    v.<br><br>COMPTON UNIFIED<br>SCHOOL DISTRICT,<br><br>        Defendant and<br>Respondent. | B297571<br><br>(Los Angeles County<br>Super. Ct. No. BS169128) |

        APPEAL from an order of the Superior Court of Los Angeles County.  Mitchell L. Beckloff, Judge.  Affirmed.
        Tritt & Tritt and James F. Tritt for Plaintiff and Appellant.
        Fagen Friedman & Fulfrost and Milton E. Foster III for Defendant and Respondent.

Velma Lankster appeals from the trial court's order denying her petition for writ of mandate. The petition sought to set aside the decision of the Commission on Professional Competence (the Commission) that affirmed her dismissal from employment with the Compton Unified School District (the District). Lankster's sole contention on appeal is that the decisions of the Commission and the trial court were erroneously based solely on communication that she believes was protected by the litigation privilege under Civil Code[1] section 47, subdivision (b). Lankster did not raise the privilege below and so she has forfeited it on appeal. Accordingly, we affirm the denial of her writ petition.

## BACKGROUND

I.    The administrative proceeding

As a public school district with a large portion of English-language learners, the District is subject to civil penalties if the teachers assigned to such students do not have cross-cultural language and academic development certification (CLAD).[2] (Ed. Code, §§ 44258.9, 45037.)

Lankster was employed by the District as a high school biology and physical education teacher on and off between 1995 and 2014. She was not CLAD certified until the summer of 2014.

During the 2010 yearly audit of CLAD certifications, the District contacted Lankster who reported that she had completed her CLAD coursework at California State University, Dominguez

---

[1] All unspecified statutory references are to the Civil Code.

[2] The Commission used the terms English language (EL) authorization interchangeably with CLAD.

Hills (Dominguez Hills). She made the same representation again in 2011 and in 2012 but did not produce her transcript when asked for it because she never took CLAD courses there. Andrea Credille, senior director of human resources, testified Lankster said "a lot of things" that were untrue.

A District audit in the summer of 2013 revealed that Lankster had still not obtained her CLAD certification. Credille notified Lankster in July 2013 that she must be certified by March 1, 2014 or face dismissal from the District at the end of the 2013-2014 academic year. Credille repeated the requirement in an August 2013 meeting with Lankster and in several subsequent notices sent to her that fall.

Lankster asked the District to advance her pay to fund a college-level course, rather than to take free classes through the Los Angeles County Office of Education. Credille told Lankster in August 2013 that salary advances would be made in September. Lankster replied that Alejandro Flores, assistant superintendent for human resources, agreed in April 2010 that the District would pay Lankster $4,000 to obtain her CLAD certification as part of a settlement of an earlier lawsuit over accrued sick-leave pay. Neither Lankster's union representative nor Credille recalled Lankster mentioning this alleged agreement to pay her $4,000 before 2013.

In December 2013, Lankster gave the District a letter with a date of April 23, 2010, purportedly from Flores to her, offering to settle the back sick-leave lawsuit and to pay for college-level CLAD courses. The Commission found the letter was forged. Flores did not write it and it was not prepared consistent with the District's settlement practices.

In June 2014, after the March 1 deadline passed and after Lankster received notice, the District filed its accusation containing three causes for dismissal: (1) evident unfitness for service; (2) persistent violation of or refusal to obey state laws or regulations; and (3) willful refusal to perform regular assignments without reasonable cause. These causes were based on Lankster's failure, despite repeated, urgent demands, to obtain her CLAD certification by March 1, 2014. Lankster requested a hearing.

In the midst of settlement talks in July 2014, Lankster's attorney gave the District's counsel a letter dated October 23, 2012, purportedly from Flores to Lankster containing a promise to provide Lankster $4,000 to complete college-level CLAD instruction. The District investigated and concluded this letter was forged. The letter referred to discussions about the $4,000 that were held on October 23, 2012 between Flores, Deborah Willard, associate superintendent of business services, and Karen Frison, interim superintendent, *all of whom had left the District's employ before October 2012*. The letter's font and format, and Flores' title were incorrect, and there was no copy of the letter in the District's files. Flores testified he did not write the letter and confirmed there was never an offer to pay for Lankster's CLAD classes.

The District amended its accusation and statement of charges to include two additional causes for dismissal: (4) immoral conduct and (5) dishonesty.

After a six-day administrative hearing during which Lankster never raised the litigation privilege, a three-member panel of the Commission issued a comprehensive decision affirming the District's decision to terminate Lankster's

4

employment. The Commission determined that the District met its burden of proof and demonstrated three causes as a matter of law: Lankster's evident unfitness for service, as alleged in the original accusation; and immoral conduct and dishonesty, as set forth in the amended accusation. The Commission found Lankster's testimony to be unreliable, evasive, dishonest, and incredible on all material points compared to the District's witnesses, who were highly credible and persuasive. It found Lankster had repeatedly lied about obtaining her CLAD at Dominguez Hills and forged the October 23, 2012 letter. Her willingness to lie about the promise to pay $4,000 was not "an isolated or small matter" but "ongoing," and "reflected a pattern and practice of deceit which began years before," when she lied about having received certification from Dominguez Hills, and continued through her deposition testimony. Applying the factors for evaluating unfitness to teach in *Morrison v. State Board of Education* (1969) 1 Cal.3d 214, the Commission concluded that Lankster's immoral and dishonest conduct related to her fitness to teach and that it was "highly likely" Lankster would continue her dishonest behavior to the detriment of the District and its students. It considered Lankster temperamentally ill-suited to be in the classroom with high school students and found no reason to put her back there.

II.    The trial court proceeding

Lankster in propria persona petitioned for writ of administrative mandamus (Code Civ. Proc., § 1094.5) seeking to set aside the Commission's order suspending her without pay and firing her. The trial court denied the petition. The court observed that although Lankster stated the Commission acted in excess of its jurisdiction, she made no argument relating to such

5

a claim.  Applying its independent judgment and weighing all of the evidence, the court determined that the Commission did not abuse its discretion in finding the District witnesses credible and Lankster incredible, and that the weight of the evidence supported the Commission's findings based on the credible testimony of Flores and Credille, among others.  Lankster timely appealed from the judgment denying her writ petition.

## DISCUSSION

Lankster's sole contention is that her dismissal was improperly based on the October 23, 2012 letter and discussions concerning it, along with her deposition testimony, all of which, she argues were protected by the litigation privilege of Civil Code section 47, subdivision (b) because they were communications she made "in attempting to defend herself from" the charges. Without the protected communications, she argues, the evidence did not support the decision and judgment.

The litigation privilege under section 47, subdivision (b)[3] " 'applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action.' " (*Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 955.)

---

[3] Section 47, subdivision (b) provides in relevant part, "A privileged publication or broadcast is one made:  [¶] . . . [¶]  (b) In any . . . (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure."

6

The litigation privilege of section 47 "is an affirmative defense subject to principles of forfeiture and waiver." (*Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 810.) It must be raised in a manner that gives the plaintiff notice and an opportunity to respond. (See *Cruey v. Gannett Co.* (1998) 64 Cal.App.4th 356, 367.)

Lankster had the burden to demonstrate applicability of the litigation privilege.[4] (See *Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 37.) However, she failed to assert the defense in front of the Commission or to raise the privilege in the trial court. Instead, the first time she raised the litigation privilege was in her brief on appeal. To be clear, Lankster made no attempt in briefing, argument, or motions below to characterize the October 23, 2012 letter or her deposition testimony as privileged, or to mention the litigation privilege at all, depriving the Commission, the trial court, and the District of the opportunity to fully address and respond to it. Indeed, her brief acknowledges her failure to raise section 47, subdivision (b) below. Under these circumstances, Lankster has forfeited this issue on appeal.

Lankster suggests that *Richman v. Santa Monica Rent Control Bd.* (1992) 7 Cal.App.4th 1457, 1463 authorizes her to

---

[4] Lankster had the benefit of counsel throughout the proceeding before the Commission but represented herself in the trial court. Her status as a party appearing in propria persona in the trial court does not give her a basis for preferential consideration. (See *First American Title Co. v. Mirzaian* (2003) 108 Cal.App.4th 956, 958, fn. 1.) A party proceeding in propria persona " 'is to be treated like any other party and is entitled to the same, but no greater consideration than other litigants and attorneys.' " (*Ibid.*)

raise the privilege for the first time on appeal. It does not. There, the legal question whether a statute applied was not forfeited for failure to raise it before the administrative body because that question was beyond the body's jurisdiction to decide and was thus properly raised in the trial court. (*Id*. at pp. 1463–1464.) But Lankster did not raise the privilege as a defense before the Commission to create a record. Lankster did not even raise it in the trial court. Although her writ petition stated that the Commission's decision was made in excess of its jurisdiction, the court could not "locate any argument related to" that claim anywhere in her brief. Nor can we.

Lankster believes we may still consider the forfeited contention. Although it is true that we have discretion to consider purely legal questions on undisputed facts (see *In re S.B.* (2004) 32 Cal.4th 1287, 1293), that exception does not apply here because the facts are not undisputed. The litigation privilege attaches to prelitigation communications that are made "in serious and good faith consideration of litigation" (*Aronson v. Kinsella* (1997) 58 Cal.App.4th 254, 268) "and not simply as a tactical ploy to negotiate a bargain" (*Edwards v. Centex Real Estate Corp.*, *supra*, 53 Cal.App.4th at p. 36). "Whether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact." (*Action Apartment Assn., Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251.) Here, whether Lankster's repeated claims to the $4,000 throughout the fall of 2013 were a ploy to coax the District to pay for her CLAD or were made in serious contemplation of litigation is a factual question that prevents us from evaluating the privilege.

Even if the litigation privilege were not forfeited, Lankster is not prejudiced by this result. Apart from whether the October 23, 2012 letter, the communications around that letter, and the deposition testimony were privileged, the Commission also based its finding that Lankster was dishonest and unfit to teach on her "pattern and practice of deceit" beginning "years before" when she lied about having met the certification requirements at Dominguez Hills. Those misrepresentations are not protected by the litigation privilege.

## DISPOSITION

The order denying the petition for writ of mandate is affirmed. Compton Unified School District is awarded its costs on appeal.

NOT TO BE PUBLISHED.


KALRA, J.*


We concur:



EDMON, P. J.



EGERTON, J.

---

\* Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.