Filed 6/7/22 Young v. Sarriedine CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WILLIAM YOUNG et al., | |
| Plaintiffs and Appellants, | G059384 |
| v. | (Super. Ct. No. 30-2017-00925398) |
| SIMON SARRIEDINE et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from a judgment of the Superior Court of Orange County, Charles Margines, Judge. Affirmed.

K&L Law Group, Marc Y. Lazo; Thomas Vogele & Associates, Thomas A. Vogele and Timothy M. Kowal for Plaintiffs and Appellants.

Bishton Gubernick and Jeffrey S. Gubernick for Defendants and Respondents.

\*       \*       \*

Plaintiffs William Young and Jennifer Young were in the business of exporting vehicles to China, but the legitimacy of their business is unclear. They apparently avoided import duties by purchasing vehicles in the United States and selling them to people who shipped them to China, where they ultimately were sold to dealers. To acquire the vehicles in the United States, plaintiffs used brokers who acted as straw purchasers.

In 2016, plaintiffs purchased a Mercedes-Benz from a third-party broker, Source Specialist, LLC (Source Specialist). Unknown to plaintiffs, Source Specialist acquired the vehicle by recruiting another straw purchaser to lease the vehicle from defendant Keyes European, LLC (Keyes European), a Mercedes-Benz dealership. Source Specialist sold the vehicle to plaintiffs but did not deliver the title to it. Payments were not made on the lease and defendant Simon Sarriedine (Sarriedine), the general manager of defendant Keyes European, instructed an employee to file a stolen vehicle report. The police seized the vehicle from plaintiffs' possession and returned it to defendant Keyes European. Plaintiffs then filed the instant action against defendant Keyes European and defendant Sarriedine for fraud, defamation, and conspiracy. Among other things, they alleged defendants knew plaintiffs had not stolen the vehicle and that they were defamed by defendants' false police report.

The jury returned a verdict in favor of plaintiffs on their defamation claim, for which it awarded punitive damages. Defendants subsequently filed a motion for judgment notwithstanding the verdict (JNOV motion). After providing adequate notice to the parties and an opportunity for supplemental briefing, the court granted JNOV in favor of defendants on grounds that were not raised in defendants' motion. Relying on the official proceedings privilege under Civil Code section 47, subdivision (b), the court held defendants' police report was privileged and could not serve as the basis for

2

plaintiffs' defamation claim.[1]  The court also found the evidence did not support the punitive damages award because plaintiffs failed to present meaningful evidence of defendants' respective financial conditions.

Plaintiffs raise two arguments on appeal.  First, plaintiffs contend the court erred by granting the JNOV motion because the relevant police report was not a privileged communication under section 47, subdivision (b).  In the alternative, they argue defendants forfeited any defense under section 47, subdivision (b).  Second, they claim they provided meaningful evidence of defendants' financial condition sufficient to support the jury's punitive damages award.  For the reasons below, we disagree with plaintiffs' contentions and affirm the judgment.

FACTS

*Plaintiffs' Vehicle Purchase and Defendants' Police Report*

Plaintiffs were in the business of purchasing vehicles in the United States and exporting them through others to China.  Instead of purchasing directly from dealerships, plaintiffs used brokers or other parties to acquire the vehicles.  They believed it was legal to use these "straw buyers."

In 2016, plaintiffs purchased a Mercedes-Benz from Fred Cerritos, the owner of Source Specialist.  Source Specialist had paid $1,000 to another individual, Samia Abuhamad, to lease the subject vehicle from defendant Keyes European, a Mercedes-Benz dealership in Van Nuys. Source Specialist told Abuhamad it would make payments on the lease for three months and then purchase the vehicle with title in its name.

---

[1]  All further statutory references are to the Civil Code unless otherwise stated.

After Abuhamad leased the vehicle, Source Specialist delivered the vehicle to plaintiffs. Plaintiffs paid $88,804 to Source Specialist but were never given title to the vehicle. At the time, they were unaware Source Specialist did not own the vehicle. Plaintiffs testified they later filed a police report and informed the general sales manager of defendant Keyes European about the "serious title fraud." The general sales manager testified he "was confused because the [vehicle was not] in [plaintiffs'] name and [they] were questioning a title." He advised plaintiffs to call the police. The general sales manager also informed defendant Sarriedine, the general manager, about plaintiffs' concerns.

The lease ultimately went into default, and Mercedes-Benz Financial Services (MBFS) demanded defendant Keyes European repurchase the lease and repay MBFS. Defendant Sarriedine instructed an employee to file a stolen vehicle report, which is central to this appeal.[2] The employee testified he did not mention plaintiffs to the police or accuse them of stealing the vehicle. It also appears the police report did not mention plaintiffs' names. The police ultimately seized the vehicle from a warehouse where it was located and returned it to defendant Keyes European.

*The Complaint*

In September 2018, plaintiffs filed the operative fourth amended complaint against defendants alleging causes of action for fraud, defamation, and conspiracy.[3]

---

[2] The parties cite to a trial exhibit that appears to have been the police report, but that trial exhibit is not included in the record on appeal.

[3] The record on appeal includes plaintiffs' motion for leave to file an amended complaint, which attaches the proposed fourth amended complaint as an exhibit. But the record does not include the final fourth amended complaint that was filed in the trial court. On the court's own motion, we augment the record to include the fourth amended complaint. We also note the complaint appears to attach the relevant police report as an exhibit.

4

Among other things, the complaint alleged defendants filed a false police report implying plaintiffs had stolen the vehicle when they knew the vehicle was not stolen. The complaint suggests defendant Sarriedine "was aware of the fraud" since May 2016 when plaintiffs told the dealership's general sales manager about the "title fraud." The complaint also alleged an officer who seized the vehicle from the warehouse mentioned plaintiffs' names, which proved defendants had provided plaintiffs' names to the police. The complaint concluded plaintiffs were defamed by defendants' false police report.

*Trial, Motion for Nonsuit, and Jury Verdict*

The court granted defendants' motion for nonsuit as to plaintiffs' fraud and conspiracy claims but allowed plaintiffs' defamation claim to proceed to trial. The jury returned a verdict in favor of plaintiffs on their defamation claim and awarded: (1) $44,500 in past economic damages against defendants, jointly and severally; (2) $30,000 in punitive damages against defendant Sarriedine; and (3) $25,000 in punitive damages against defendant Keyes European.

*Defendants' JNOV Motion*

After judgment was entered, defendants filed a JNOV motion arguing there was no evidence to support the jury's findings. Among other things, defendants claimed their police report did not accuse plaintiffs of stealing the vehicle and they never mentioned plaintiffs in any of their communications with law enforcement. They also argued the evidence did not support an award of punitive damages.

On March 11, 2020, the court continued the hearing on the JNOV motion to March 25, 2020. The court's minute order indicated the court intended to grant JNOV and invited the parties to submit additional briefing on two issues: (1) whether plaintiffs' defamation claim was barred by the official proceedings privilege under section 47, subdivision (b); and (2) whether the punitive damages award was supported by substantial evidence of defendants' respective financial conditions. Both parties filed supplemental briefs addressing these issues. Due to the COVID-19 pandemic, the court was closed beginning on March 17, 2020, and the hearing was ultimately rescheduled for May 26, 2020.

In May 2020, the court granted JNOV in favor of defendants. First, the court noted plaintiffs' defamation claim was based on defendants' report of a suspected crime (the stolen vehicle) to law enforcement. Relying on the official proceedings privilege under section 47, subdivision (b), the court emphasized "reports to police of suspected criminal activity, even false reports made with malice, are absolutely privileged . . . ." The court concluded the evidence was insufficient to establish the subject communication was unprivileged, a necessary element of plaintiffs' defamation claim. Second, the court held there was no substantial evidence to support the punitive damages award because there was no evidence presented regarding defendants' respective financial conditions.

In June 2020, the court entered an amended judgment in favor of defendants. In September 2020, the court entered a revised amended judgment awarding costs to defendants. Plaintiffs appealed.

DISCUSSION

Plaintiffs contend the court erred by granting the JNOV motion because defendants' false police report, which served as "the entire basis of the defamation claim," was not privileged under section 47, subdivision (b). They note the California

6

Legislature amended section 47, subdivision (b) to remove the privilege for communications to law enforcement that are intentionally false or made with reckless disregard for the truth. Plaintiffs also argue defendants forfeited any defense under section 47, subdivision (b), so the court could not have raised the issue sua sponte. Plaintiffs further claim the court erred by granting partial JNOV on the issue of punitive damages because the jury's punitive damages award was supported by "meaningful evidence" of defendants' respective financial conditions.

The court did not err. When defendants communicated with law enforcement in 2017, their report was absolutely privileged under section 47, subdivision (b). The amended version of section 47, effective as of January 1, 2021 (Stats. 2020, ch. 327, § 2), does not apply retroactively to the instant case. The evidence accordingly was insufficient to establish the relevant police report was unprivileged, a necessary element of plaintiffs' defamation claim. Contrary to plaintiffs' assertion, defendants never forfeited any defense under section 47, subdivision (b), and the court was authorized to grant JNOV on its own motion. We further disagree with plaintiffs' contention that they presented meaningful evidence of defendants' respective financial conditions. For the foregoing reasons, we affirm the court's order granting JNOV in favor of defendants.

*Applicable Law and Standard of Review*

Code of Civil Procedure section 629, subdivision (a) provides: "The court, before the expiration of its power to rule on a motion for a new trial, either of its own motion, after five days' notice, or on motion of a party against whom a verdict has been rendered, shall render judgment in favor of the aggrieved party notwithstanding the verdict whenever a motion for a directed verdict for the aggrieved party should have been granted had a previous motion been made."

"''The trial court's discretion in granting a motion for judgment notwithstanding the verdict is severely limited." [Citation.] "'The trial judge's power to

7

grant a judgment notwithstanding the verdict is identical to his power to grant a directed verdict [citations]. The trial judge cannot reweigh the evidence [citation], or judge the credibility of witnesses. [Citation.] If the evidence is conflicting or if several reasonable inferences may be drawn, the motion for judgment notwithstanding the verdict should be denied. [Citations.] "A motion for judgment notwithstanding the verdict of a jury may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. If there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied." [Citation.]'" [Citation.]' [Citation.] 'On review of an order granting JNOV, we "'must resolve any conflict in the evidence and draw all reasonable inferences therefrom in favor of the jury's verdict.'"'" (*Simmons v. Ware* (2013) 213 Cal.App.4th 1035, 1047-1048.)

*The Court Did Not Err by Granting the JNOV Motion*

        A. Privilege Under Section 47

        To be actionable as defamation, a statement cannot be privileged. (§§ 45, 46; *Taus v. Loftus* (2007) 40 Cal.4th 683, 720.) "Section 47 establishes a privilege that bars liability in tort for the making of certain statements." (*Hagberg v. California Federal Bank* (2004) 32 Cal.4th 350, 360 (*Hagberg*).) This includes "[a] privileged publication or broadcast" made "[i]n any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law . . . ." (§ 47, subd. (b).) As our Supreme Court has noted, most cases have found reports to police of suspected criminal activity are privileged under section 47, subdivision (b). (*Hagberg*, at p. 364.) These reports may not serve as the predicate for a tort claim except a claim for malicious prosecution. (*Id.* at p. 360.)

8

Prior to 2021, our Supreme Court held the privilege was absolute and applied "without respect to the good faith or malice of the person who made the statement." (*Hagberg*, *supra*, 32 Cal.4th at p. 361.) Since then, the California Legislature amended the statute, effective January 1, 2021, to make the privilege qualified. (§ 47, subd. (b)(5); Stats. 2020, ch. 327, § 2.) The amended statute provides: "This subdivision does not make privileged any communication between a person and a law enforcement agency in which the person makes a false report that another person has committed, or is in the act of committing, a criminal act or is engaged in an activity requiring law enforcement intervention, knowing that the report is false, or with reckless disregard for the truth or falsity of the report." (§ 47, subd. (b)(5).)

Relying on the amended statute, plaintiffs contend the stolen vehicle report defendants filed with the Van Nuys Police Department is not privileged because it contained false information and was made with actual malice. Plaintiffs accordingly argue we should remand and direct the court to apply section 47, subdivision (b)(5). But the amended statute does not apply to the instant case because there is no indication of legislative intent to apply the amendment retroactively. (*Quarry v. Doe I* (2012) 53 Cal.4th 945, 955 ["there is a presumption against retroactive application unless the Legislature plainly has directed otherwise by means of "'express language of retroactivity *or* . . . other sources [that] provide a clear and unavoidable implication that the Legislature intended retroactive application"'"]; *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 841 [statutes are construed to apply prospectively if retroactive application is ambiguous].)

Defendants filed the police report in 2017 so we analyze the issue under *Hagberg*'s absolute privilege rule. (*Hagberg*, *supra*, 32 Cal.4th at p. 355.) Under that rule, the court did not err by finding defendants' report and communications with law enforcement were absolutely privileged and could not serve as the basis for plaintiffs' defamation claim.

9

Plaintiffs next argue the court erred by "expressly contradicting itself through its rulings." They emphasize the court allowed the police report into evidence with no limiting instructions to the jury but later found the police report was privileged when granting the JNOV motion. Plaintiffs misunderstand the purpose of section 47. The privilege under section 47, subdivision (b) is not an evidentiary privilege. Rather, it operates as a limitation on liability for tort claims. (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1168.) Given this distinction, admission of the police report into evidence does not constitute reversible error. The report was relevant to the issue of how defendants were able to obtain possession of the vehicle, and the court's JNOV ruling was based on its determination that the police report could not support a claim for defamation. Thus, contrary to plaintiffs' suggestion, the court was not required to make any privilege determinations prior to the jury's verdict.

Plaintiffs further contend the court could not have determined sua sponte that the police report was privileged because defendants waived any defense under section 47, subdivision (b). They claim defendants failed to assert the privilege as an affirmative defense in their answer. Not true. Defendants' ninth affirmative defense stated: "As a separate and distinct affirmative defense, [d]efendants state and allege that their conduct was at all relevant times lawful, privileged and/or justified." This general allegation of privilege was sufficient because the complaint alleged facts indicating the application of section 47. Indeed, the complaint states the alleged defamation was "providing [p]laintiffs' names to police and . . . the police report . . . ." Defendants' ninth affirmative defense accordingly provided adequate notice that section 47, subdivision (b) was at issue. (*Cruey v. Gannett Co.* (1998) 64 Cal.App.4th 356, 367 ["Although the general rule is that a privilege must be pled as an affirmative defense [citation], . . . California authority suggests an exception where the complaint alleges facts indicating applicability of a defense"].)

We likewise disagree with plaintiffs' contention that the court could not have relied on section 47, subdivision (b) because defendants never raised the issue during trial or in their JNOV motion. Code of Civil Procedure section 629 expressly allows a trial court to grant judgment notwithstanding the verdict on its own motion. The statute provides in relevant part: "The court, *before expiration of its power to rule on a motion for a new trial . . . of its own motion, after five days' notice . . .* shall render judgment in favor of the aggrieved party notwithstanding the verdict whenever a motion for a directed verdict for the aggrieved party should have been granted had a previous motion been made." (*Id.*, subd. (a), italics added.)

Here, the court complied with the statutory requirements for a court initiated JNOV motion. On March 11, 2020, the court notified the parties it was inclined to grant JNOV based on section 47, subdivision (b) and the lack of evidence regarding defendants' respective financial conditions. The court allowed the parties to file briefs addressing these two issues by March 18, 2020. The parties accordingly had five days' notice as required by the statute. The court also was required to rule on the JNOV motion within 75 days of when the court clerk mailed notice of entry of judgment. (Code Civ. Proc. §§ 629, 660, subd. (c).) The clerk mailed notice of entry of judgment on January 17, 2020, so the court was required to rule on the JNOV motion by April 1, 2020 — 75 days later. (Code Civ. Proc. § 660, subd. (c).) As a result of the COVID-19 pandemic, the court continued the matter and decided the JNOV motion on May 26, 2020, the first day the court reopened to the public. Plaintiffs do not argue the court erred by doing so or failed to comply with any of the statutory time limits. In short, the court was authorized to rely on section 47, subdivision (b) and grant JNOV on its own motion.

Finally, plaintiffs argue the court violated Evidence Code section 353, which "should have prevented" the court from setting aside the verdict. But Evidence Code section 353 has no application here. The provision prevents the setting aside of a judgment based on the erroneous admission of evidence if the complaining party failed to

11

object at the time of admission. (Evid. Code § 353.) The court's ruling in the instant case was not based on any evidentiary ruling or rationale that the police report was improperly admitted into evidence. Instead, the court granted the JNOV motion because defendants' report to law enforcement could not serve as the basis for plaintiffs' defamation claim.

For the foregoing reasons, the court did not err by finding the evidence was insufficient to establish the relevant police report was unprivileged, a necessary element of plaintiffs' defamation claim.[4]

### B. Punitive Damages

Plaintiffs next contend the court erred by granting partial JNOV on the issue of punitive damages. They claim the court incorrectly required substantial evidence of defendants' financial condition when only "meaningful evidence" was required. According to plaintiffs, they presented meaningful evidence sufficient to justify the punitive damages award. We disagree.

"Evidence of a defendant's financial condition is a legal precondition to the award of punitive damages." (*Soto v. BorgWarner Morse TEC Inc.* (2015) 239 Cal.App.4th 165, 195.) "[A]n award of punitive damages cannot be sustained on appeal unless the trial record contains meaningful evidence of the defendant's financial condition." (*Adams v. Murakami* (1991) 54 Cal.3d 105, 109.) "Without such evidence, a reviewing court can only speculate as to whether the award is appropriate or excessive." (*Id.* at p. 112.)

---

[4]   In addition to the police report, defendants identify other communications they had with law enforcement and argue those communications cannot support plaintiffs' defamation claim. Because plaintiffs concede the police report "was the entire basis of the defamation claim," we need not address any other communications or statements.

12

The plaintiff seeking to recover punitive damages bears the burden of establishing the defendant's financial condition. (*Adams v. Murakami*, *supra*, 54 Cal.3d at p. 123.) Net worth is the most common measure of wealth, but there is no fixed standard to determine a defendant's ability to pay a punitive damages award. (*County of San Bernardino v. Walsh* (2007) 158 Cal.App.4th 533, 546.) The plaintiff "must provide a balanced overview of the defendant's financial condition; a selective presentation of financial condition evidence will not survive scrutiny." (*Farmers & Merchants Trust Co. v. Vanetik* (2019) 33 Cal.App.5th 638, 648.)

Here, plaintiffs emphasize defendant Keyes European is a Mercedes-Benz dealership, and they rely on defendant Sarriedine's testimony that he sold 9,000 vehicles and serviced 40,000 vehicles per year. They also note defendant Sarriedine was employed as the dealership's general manager and owned another dealership. But none of these facts are evidence of defendants' actual financial status. "We may not infer sufficient wealth to pay a punitive damages award from a narrow set of data points, such as ownership of valuable assets or a substantial annual income." (*Farmers & Merchants Trust Co. v. Vanetik*, *supra*, 33 Cal.App.5th at p. 648.) Indeed, "'evidence of earnings or profit alone are not sufficient "without examining the liabilities side of the balance sheet."'" (*Soto v. BorgWarner Morse TEC Inc.* (2015) 239 Cal.App.4th 165, 194.) "'Normally, evidence of liabilities should accompany evidence of assets, and evidence of expenses should accompany evidence of income.'" (*Ibid.*) Because plaintiffs failed to provide any evidence of defendants' earnings, assets, liabilities, or expenses, the court did not err by finding there was insufficient evidence to support the punitive damages award.

DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs incurred on appeal.

SANCHEZ, J.

WE CONCUR:

BEDSWORTH, ACTING P. J.

GOETHALS, J.